[Civ. No. 12344. Second Appellate District, Division Two.—December 15, 1939.]

T. H. McCOMSEY, Respondent, v. MAURICE M. LEAF, Appellant.

Entenza & Gramer for Appellant.

Milton M. Cohen and Milton M. Cohen, Jr., for Respondent.

MOORE, P. J.—Appeal from a summary judgment under section 437c of the Code of Civil Procedure for the sum of $7,255. The validity of the judgment is to be determined by the sufficiency of the affidavits considered upon the hearing of the motion. Plaintiff pleads the common count "that within two years last past plaintiff loaned and advanced to defendant at the latter's specific instance and request $7,311.75, which said sum defendant promised and agreed to repay". The answer denies the loan of any sum of money or that he ever promised or agreed to repay any sum to plaintiff.

I. The code section provides that "when an answer is filed in an action to recover upon a debt . . . if it is claimed that there is no defense to the action, . . . on motion of either party . . . supported by affidavit of any person or persons having knowledge of the facts, the answer may be stricken out . . . and judgment may be entered, in the discretion of the court, unless the other party by affidavit shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . . The affidavit in support of the motion must contain facts sufficient to entitle plaintiff to a judgment in the action and the facts stated therein shall be within the personal knowledge of the affiant and shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant . . . can testify competently thereto. The affidavit or affidavits in opposition to said motion shall be made by . . . the defendant or by any person having knowledge of the facts and together shall set forth facts showing that the party has a good and substantial defense to the plaintiff's action . . . upon the merits. The facts . . . shall be within the personal knowledge of the affiant, shall be set forth with particularity and each affidavit shall show affirmatively that the affiant . . . can testify competently thereto. . . . "

II. In his affidavit, plaintiff avers that defendant visited plaintiff's home at Salt Lake City about April 1, 1937; that they had a long conversation relative to defendant's future in business; that plaintiff's wife and daughter were present; that defendant stated that he could not make the most of his vocation as a photographer since his rented studio was unsatisfactory in construction and equipment; that, if plaintiff could finance the building and equip a studio, defendant would see that he was protected in every way for the loan; that he was certain that he could commence repaying plaintiff in a very short time; that plaintiff stated he would let him have the money if he would hold down the cost to $5,000 or $6,000; that plaintiff would pay him the money as the work progressed; that defendant assented and shortly after left Salt Lake City; that defendant selected a lot in Brentwood as a situs for his studio; that plaintiff inspected the lot; that he advanced the defendant moneys for the purchase of photographic supplies, for the purchase of the lot, for the construction of the studio, and for furnishings, draperies, furniture and color camera equipment; "that the whole thereof totaling the sum of $7255 is now due, owing and unpaid".

Defendant's answering affidavit, among other things, says that Helen J. Leaf is the daughter of plaintiff; that, on or about April 1, 1937, affiant and said Helen at the expense of plaintiff and upon his invitation visited him at Salt Lake City; that plaintiff and his wife agreed to give to affiant the sum of approximately $10,000 if and when he would marry said Helen; that affiant . . . on the 5th day of April, 1937, did marry the said Helen; that thereupon defendant and the said Helen came to Los Angeles and resided together; that affiant purchased a lot, erected a studio building, and equipped it with the moneys which had been given him by the plaintiff, totalling $7,255; that the title to said property was taken in the name of defendant and said Helen as joint tenants and the said moneys were deposited in their bank account as joint tenants; that plaintiff was present during the construction of the said studio and approved of affiant's expenditures; that on December 23, 1938, the said Helen left defendant and sued him for divorce; that prior to the filing of said divorce action, plaintiff never made any demand or suggestion that defendant repay plaintiff any part of said sum; but that

then for the first time plaintiff claimed that the said money was a loan.

III. Proceeding upon the hypothesis that all of the averments of defendant's affidavit are ultimate facts or conclusions of law, plaintiff contends that the writing is wholly insufficient to avoid a summary judgment and relies upon two California decisions in support of his position, namely, *Gardenswartz* v. *Equitable Life etc. Co.*, 23 Cal. App. (2d) (Supp.) 745 [68 Pac. (2d) 322], and *Cowan Oil & Refining Co.* v. *Miley Petroleum Corp., Ltd.*, 112 Cal. App. (Supp.) 773 [295 Pac. 504], both by the appellate division of the superior court.

As to the Gardenswartz case, the affidavit was insufficient because of its hearsay character. In the Cowan case, the defendant operated oil wells while plaintiff conducted an extraction plant. A contract subsisted between the parties providing for plaintiff to extract gasoline from the gas delivered to it by defendant. Plaintiff sued defendant for dry gas alleged to have been delivered to defendant from its extraction plant. Defendant filed a general denial and in a counter claim sued plaintiff for the value of an unreasonable amount of gas alleged to have been converted during the extraction process. While plaintiff was authorized under said contract to use a reasonable amount of gas in its own burners, the quantity used "in excess of a reasonable amount necessary to operate plaintiff's plant" was of the value of $1,897.35. The decision approving of the summary judgment was based upon the absence from its affidavit of any facts in support of the answer. While we are not called upon here to pass upon the merits of that decision and the facts of that case, we are satisfied that the opinion filed therein declared a rule more severe than was contemplated by the legislature and not supported by the authorities cited in the opinion. The rule there announced was that "the effect of these provisions is to require a defendant in order to defend a summary judgment to present an affidavit setting forth *evidentiary* facts sufficient, if accepted as true, to show that the defendant has a defense to plaintiff's claim" etc., and the following authorities are cited: *Sher* v. *Rodkin*, 198 N. Y. Supp. 597; *O'Meara* v. *National Park Bank*, 239 N. Y. 386 [146 N. E. 636, 39 A. L. R. 747]; *Galusha Stove Co.* v. *Pivnik Const. Co.*, 132 Misc. 875 [230 N. Y. Supp. 720];

*Webster* v. *Pelavin,* 241 Mich. 19 [216 N. W. 430]. In *Sher* v. *Rodkin, supra,* it was held that the affidavit consisted of "ultimate facts which, if established at the trial would constitute a defense". In the O'Meara case, defendant's affidavit consisted of nothing but denials of facts in plaintiff's affidavit, which evoked the announcement of the court that the rule requires facts in the affidavit rather than mere denials. In the Galusha case, plaintiff obtained a summary judgment on a negotiable note because defendant's affidavit averred nothing but conclusions such as "understand" and "with knowledge" in an attempt to prove the plaintiff was not a holder in due course. The defendant's affidavit in the Webster case averred that "plaintiff failed to perform an agreement" and the "notes are void", which in all respects failed to comply with the Michigan statute which is substantially the same as our section 437c.

IV. Because of the importance of the subject to bench and bar, we have explored the decisions of other jurisdictions with a view of exposing the practice most nearly consonant with constitutional provisions and with accepted fundamental principles. The subject received its earliest treatment by the courts of New York in *Dwan* v. *Massarene,* 199 App. Div. 872 [192 N. Y. Supp. 577]. That action was to recover on two promissory notes. After defendant answered that the delivery of the note was conditional, plaintiff moved for a summary judgment based upon his affidavit "that there is no defense to the action". Defendant's affidavit tended to show that the delivery of the notes was conditional upon the sale of certain property and payment out of the avails thereof. In affirming an order denying summary judgment, it was said: "The court is not authorized to try the issue but is to determine whether there is an issue to be tried. If there is, it must be tried by a jury. . . . The defendant must show that he has . . . a plausible ground of defense, something fairly arguable and of a substantial character . . . that his denial or his defense is not false and sham but interposed in good faith and not for delay."

· *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22 [139 N. E. 766, 27 A. L. R. 1465], involved a transaction in foreign exchange. Plaintiff sued defendant for $8,500 which had been deposited with defendant for the purpose of having 47,222 marks placed to the credit of a designated payee in Berlin, on the theory

that the original contract had been rescinded by reason of defendant's failure to comply with its terms. In the answering affidavit, defendant presents four defenses: (1) that the transaction was an executed, present sale of exchange; (2) that certain banking customs relieved it from responsibility; (3) that a modified contract had been substituted; and (4) that no rescission was ever effected. In passing upon the sufficiency of this affidavit, the court decided that it was a matter of legal interpretation for the court to determine whether the plaintiff or the defendant was correct in his contention, and concluded with the following:

"One person may argue that, as a matter of law, the assignor abandoned and lost the benefit of his rescission; another might think that such abandonment was a question of fact for the jury. But upon one proposition we are all agreed, and that is the primary one presented upon this appeal, the right to a summary judgment. *It never could have been, or in justice ought to have been the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment.* (Italics ours.) Whatever the final judgment may be, the defendants were entitled to have the issue deliberately tried, and their right to be heard in the usual manner of a trial protected."

In *Bloom* v. *Hershowitz*, (202 N. Y. Supp. 298) the action was based upon the lease of a loft which provided that defendant was to pay, besides the stipulated monthly rental, a sum equal to one-third of the cost of installing a burglar protection device and its maintenance. This motion for judgment was supported by an affidavit "that payment of the sum demanded was never made and that the answer is interposed for delay". Defendant in reply denied the reasonableness of the $375, averred the subsistence of a new agreement with plaintiff's assignor to the effect that if defendant continued to occupy the loft for another year, plaintiff's assignors agreed to waive payment of such maintenance charge upon defendant's paying one-third of the water charge and that thereafter the security deposited on the original lease was applied on the new lease. The court held that two substantial issues were raised by defendant's affidavit "which entitle her to a trial, namely (1) Is $375 one-third of the reasonable maintenance charge? and (2) was it waived

by plaintiff's assignor as a consideration for defendant's execution of said new agreement?

In the case of *Dempsey* v. *Langton,* 266 Mich. 47 [253 N. W. 210], a summary judgment was granted. Plaintiff declared on the common counts for money had and received and declared that the money is due upon request. Defendant answered that the money is not due until February 15, 1933, or sixty days after the filing of the complaint. In his answering affidavit, defendant averred that prior to September 25, 1932, the defendant was negotiating with the plaintiff for a loan of $950 or for the sale of her business to the plaintiff by making a cash payment of $950, the defendant to have the use of the money until February 15, 1933, when the sum should be applied on the purchase price or returned to the plaintiff in the event of his purchase; that as a result of said negotiations, plaintiff gave defendant two checks, to wit: $600 check September 25, 1932, and a $350 check October 5, 1932; that defendant gave plaintiff her note for $950 on said September 25th, payable February 15, 1933; that said note was returned to defendant November 17, 1932; that it was *understood and agreed* by and between the said plaintiff and this deponent that the said sums of money were to be used in the business of "Therese Company" (a name for defendant's business) until February 15, 1933, at which time plaintiff agreed to pay the balance of $10,000 or have the return of the money she had deposited; . . . "that shortly after plaintiff *agreed* to purchase defendant's business and deposited said $950, plaintiff "requested" deponent to give her a promissory note "in payment of the sum of $950"; that deponent "granted the request and executed a promissory note in said sum of $950"; that plaintiff *"accepted"* "the promissory note" in payment of said $950 and "retained" it for four weeks and "returned" it to deponent, tendering the note back to plaintiff "but she *refused to accept* it". The court said: In our opinion these statements above quoted are *not conclusions,* but are statements made by the defendant of what she expected to prove, and as such under the pleadings in this case were admissible in evidence. We must, therefore, find that the defendant's affidavit of merits did comply with section 3 of rule 30 of the Michigan Court Rules of 1931. As to the second question, this court has repeatedly held that it is improper to grant a summary

judgment where there is a dispute as to the facts. In other words, a *summary judgment in favor of the plaintiff may not be given unless, granting the truth of all the facts alleged in the defendant's affidavit of merits, plaintiff would still be entitled to recover.''* (Authorities cited.) ''The province of the court, on motion for summary judgment is to determine judicially whether there is an issue of fact which, if resolved in favor of defendant, would preclude a verdict for plaintiff in whole or in part of his demand.'' (*Baxter* v. *Szucs,* 248 Mich. 672 [227 N. W. 666].)

In *Maser* v. *Gibbons,* 280 Mich. 621 [274 N. W. 352], plaintiff sued defendant upon his warranty to recover unpaid taxes found to be a lien upon the property sold by defendant to plaintiff. In his answering affidavit, defendant averred that for four years prior to said conveyance by defendant to plaintiff, the property had been sold on a land contract to one George Spanos; that thereafter plaintiff took an assignment of the vendee's interest in said contract as security for loans to said Spanos; that thereafter plaintiff agreed to loan said Spanos moneys to pay off said land contract provided defendant would assign the vendor's interest in the contract and deed the premises to plaintiff; that ''said $200 deduction was made because plaintiff agreed to pay the taxes due''. The lengthy affidavit contains both averments of hearsay and conclusions. The Supreme Court of Michigan again announcing that a summary judgment should not be entered where the issue as to a material fact is raised by the affidavit, held that an issue was framed by the pleadings on whether the conveyance in question was made in fulfillment of the Spanos contract.

In the case of *Wyatt* v. *Madden,* 32 Fed. (2d) 838 [59 App. D. C. 38], in a suit brought by plaintiff to recover on two promissory notes, the defendant in his answering affidavit to the motion for summary judgment alleged that she was induced to execute and deliver to plaintiff said notes in reliance upon certain material representations made by plaintiff's agent; that the said representations were false; that they were made with intent to deceive, and numerous other conclusions. The Court of Appeals of the District of Columbia reversed the summary judgment and declared that the enforcement of rule 73 deprives a defendant of a trial on the merits. ''Therefore we have ruled that *plaintiff's affidavit*

*must be strictly construed. An affidavit of defense, on the contrary, is to be liberally construed, and, if its terms reasonably warrant the inference that the defendant has a substantial defense to plaintiff's claim, summary judgment ought not to be entered."*

Upon a consideration of these authorities and the statute, the better rule appears to be that to warrant a summary judgment there "must be a failure on the part of defendant to satisfy the court that there is any basis for his denial or any truth in his defense" (Cardozo in *Curry* v. *MacKenzie*, 239 N. Y. 267 [146 N. E. 375]) and that unless the defendant does so fail, the case should proceed to a deliberate trial in the usual course. (*Krieger* v. *Dennie*, 123 Cal. App. (Supp.) 777 [10 Pac. (2d) 820].)

V. In the light of the foregoing authorities, we return now to a review of the affidavits considered on the motion for a summary judgment. Defendant's affidavit is not inherently improbable. It contains sufficient to satisfy a court that there is an "arguable defense". Upon reading it, the court cannot say, as a matter of law, "that the issue is not genuine but feigned and that there is in truth nothing to be tried". (*Curry* v. *MacKenzie, supra.*) The "particulars" recited in said affidavit meet the requirements of the code section. The inadvertent use of the word "agreed" is not sufficient to void the averments of the gift of $10,000 as a consideration for the marriage. It must be "liberally construed". (*Wyatt* v. *Madden, supra.*) Granting the truth of defendant's affidavit, it surely will not be said that "plaintiff would still be entitled to recover". (*Dempsey* v. *Langton, supra.*) Such "conclusions" creep into the language of trained lawyers on the witness stand as well as into their pleadings. It is not strange then that, out of the presence of a critical adversary and away from the kindly admonition of a trial court, one should use such popular conclusions as "agreed" and "gift" each of which is in popular usage to betoken an occurrence. Certainly, under either affidavit, there was an agreement of some sort made. Plaintiff himself avers "a long conversation with defendant"; impliedly avers that he promised to loan money and that defendant promised to repay it. The marriage followed. The money was paid to defendant. Only a trial can determine whether it was a loan. Notwithstanding the presence of the words criticized

as conclusions, the vice, if any there be, is cured by the further recital of simple and intelligible facts.

Since defendant is competent to testify to all the contents of his affidavit, the traditional conclusions there included will neither vitiate his particularities nor nullify their force in a summary proceeding. But, on the contrary, the details related vitalize and picturize the meeting of the parties and evince with emphasis the existence of an arguable fact.

The facts that plaintiff paid a large sum of money to an impoverished stranger of limited experience, to invest in land and building without requiring a mortgage or any other security; that such payment followed a conference which was suggested by plaintiff and which occurred in plaintiff's home; that it was attended by defendant from afar; that the marriage was thereupon promptly celebrated; that a large sum of money was immediately paid to defendant without exacting a mortgage on the land it purchased; that the relation of borrower and lender arose from the passing of the money is denied under oath; these facts encourage the application of the presumption that money paid to another is due him. (Code Civ. Proc., sec. 1963) and they demand that the court hear the witnesses speak.

VI. But plaintiff contends that the defendant would not be competent to testify to an oral contract in consideration of marriage. (Code Civ. Proc., sec. 1973.) If this were an action to recover upon a promise made as a consideration for a marriage, plaintiff would be exactly correct. Defendant is not seeking to recover anything. He avers in his affidavit that there was an agreement to give the money in consideration of his marriage to Helen but he also avers that the marriage was celebrated and thereafter the money was paid. Said section 1973, Code of Civil Procedure, merely contemplates testimony in an action arising out of an executory contract. According to defendant's contention, after the marriage had been effected and the money paid, the parties themselves had thereby disposed of all controversies arising out of "an agreement made upon consideration of marriage". Nothing remained to litigate. The defendant then had both his money and his wife. Therefore, while the oral contract averred by defendant is invalid under the statute (Civ. Code, sec. 1624) yet, after its mutual execution and

consummation, it is vain to object for want of a writing. (*Freitas* v. *Freitas*, 31 Cal. App. 16 [159 Pac. 611].)

In the Freitas case, the court found that the ante-nuptial agreement was not written but it was there held that after a conveyance has been made pursuant to an oral agreement required to be in writing by Civil Code, section 1624, it cannot be objected that such conveyance could not have been compelled. The statute has no application to an executed agreement. (*Bates* v. *Babcock*, 95 Cal. 479 at 488 [30 Pac. 605, 29 Am. St. Rep. 133, 16 L. R. A. 745]; *James* v. *Hall*, 88 Cal. App. 528, 534 [264 Pac. 516].)

On the contrary, plaintiff contends that mutual and complete performance of such a contract by both parties does not dispose of the statute of frauds, citing *Sudbrock* v. *Kroener*, 136 Cal. App. 624 [29 Pac. (2d) 435], *Hughes* v. *Hughes*, 49 Cal. App. 206 [193 Pac. 144], *Swift* v. *Swift*, 46 Cal. 266, 267 and *Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 Pac. 333]. A study of these authorities discloses that they have no application. In the Sudbrock case, while Mr. Sudbrock was indebted to Mrs. Kroener under a judgment, he conveyed the last of his property to his newly-wedded wife, pursuant to a prenuptial arrangement, which operated a fraud upon his creditor. In the Hughes case, Mrs. Hughes sued to recover certain lands promised in an oral antenuptial, executory agreement only partially performed. In the Swift case, a son sued his father for moneys advanced for the improvement of the farm occupied by the son. A defense that the money was not to be repaid until the farm should yield an income sufficient for that purpose was untenable because a number of years would necessarily elapse before the farm could yield sufficient to pay the advances and was, therefore, within the statute of frauds. In *Trout* v. *Ogilvie, supra,* an attempt was made to recover property which deceased had orally promised to devise to plaintiff in consideration of marriage and of fulfilling her marital obligations. Clearly, none of these cases except the first mentioned presents a situation where the oral contract had been wholly performed.

We are not concerned with a case of partial performance of an oral contract or with a contract wholly executory. According to the defendant's affidavit the only contract mentioned had passed into history because it had been recipro-

cally performed long prior to the filing of plaintiff's complaint.

For the reasons indicated, the judgment of the superior court is hereby reversed and the cause remanded.

Wood, J., concurred.

McCOMB, J., Dissenting.—I dissent. As pointed out in the majority opinion, the present holding is contrary to the rule as announced by the appellate department of the Superior Court of Los Angeles County in two well-considered opinions by Mr. Presiding Judge Shaw, to wit, in *Cowan Oil & Refining Co.* v. *Miley Pet. Corp.*, 112 Cal. App. (Supp.) 773 [295 Pac. 504], and *Gardenswartz* v. *Equitable Life etc. Co.*, 23 Cal. App. (2d) (Supp.) 745 [68 Pac. (2d) 322]. In both of the cases just cited the rule, supported by authority, is announced that in considering affidavits on a motion for a summary judgment the facts must be set forth and conclusions of law will be disregarded. Should I entertain any doubt, which I do not, as to the correctness of these two decisions, I still would be inclined to follow them, in view of the fact that in this case we are prescribing a rule of procedure to be followed in the superior court. It is my opinion that the rules of procedure, so far as practicable, should be identical in the municipal and superior courts. The Appellate Department of the Superior Court of Los Angeles County has for a number of years last past prescribed for the municipal court the rule of procedure set forth in the cases just cited. If the majority opinion in the instant case is to stand, a different rule will be applied in the superior court. This tends to complicate instead of to simplify the practice and procedure, and has a tendency to entrap attorneys and litigants rather than to cause their cases to be tried upon the merits.

For the foregoing reasons, in my opinion the judgment appealed from should be affirmed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 8, 1940.