[Civ. No. 16401. Second Dist., Div. One. Feb. 21, 1949.]

CARL GRUENINGER, Plaintiff and Respondent, v. LIV-INGSTONE & COMPANY (a Corporation), Appellant; WILLIAM GRUENINGER et al., Cross-defendants and Respondents.

Robert Gibson Johnson, Don A. Ladenberger and Harold B. Pool for Appellant.

Gibson, Dunn & Crutcher, Homer D. Crotty, Frederic H. Sturdy, Frank L. Mallory, Adams, Duque & Hazeltine, O'Melveny & Myers, Charles F. Johnson, Heller, Ehrman, White & McAuliffe, Orrick, Dahlquist, Neff & Herrington and B. J. Feigenbaum as Amici Curiae on behalf of Appellant.

Warner I. Praul for Respondents.

Edmond Gattone as Amicus Curiae on behalf of Respondents.

YORK, P. J.—This is an appeal by defendant corporation from a summary judgment in favor of plaintiff and his assignors in an action based on the common count of money had and received by defendant for the use of plaintiff and his assignors.

It appears from the record herein, that appellant, a regularly licensed broker, sold to respondents in the regular course of business, 580 shares of the common stock of the Gulf, Mobile and Ohio Railroad Company, when, as and if issued, as follows: on January 16, 1946, a total of 340 shares at $29.875 per share; and on February 6, 1946, 240 shares at $31.50 per share. On these dates the said purchasers paid a sum equal to 40 per cent of the purchase price of the stock, the balance thereof payable upon delivery.

On May 17, 1947, respondents served on appellant notices of rescission of said contracts of purchase, said rescission being made on the ground of fraud on the part of appellant; and on May 29, 1947, respondents instituted the instant action to recover the sums paid by them. Thereafter, on June 25, 1947, appellant tendered delivery of all shares of stock to respondents and demanded the balance of 60 per cent of the purchase price. Respondents refused to accept the stock so tendered and on June 26, 1947, appellant sold the shares on the New York Stock Exchange and credited the proceeds realized therefrom to respondents.

As heretofore stated, the complaint was in the form of a common count for money received to the use of respondents. Appellant answered denying generally and specifically each and every allegation of said complaint and at the same time filed its cross-complaint for breach of contract, seeking recovery from respondents of the balance allegedly owed them after crediting the proceeds of the sale, to wit: $4,698.06.

Respondents interposed a general and special demurrer to said cross-complaint. According to respondents' brief and not disputed by appellant, the general demurrer to the cross-complaint was based upon the proposition that the transactions disclosed thereby which had transpired between the parties were in violation of section 8, Corporate Securities Act of California [Stats. 1917, p. 673 as amended; 2 Deering's Gen. Laws, Act 3814], and therefore the cross-complaint was fatally defective because it was based on an illegal and void transaction.

After oral argument and the submission of written briefs by counsel for both sides, such demurrer was sustained on September 19, 1947, without leave to amend. Thereafter, on October 6, 1947, appellant and cross-complainant moved the court to set aside the order sustaining the demurrer without leave to amend and to permit it to file a first amended cross-complaint, a copy of which was attached to the notice of motion. This motion was denied.

On October 13, 1947, Carl Grueninger, the original plaintiff, made a motion to strike out the answer and to enter a judgment in favor of himself and his assignors, William Grueninger and Elizabeth Pierce, "on the ground there is no defense to the action."

The motion was supported by affidavits of said Carl Grueninger and his said assignors, as well as of that of his counsel, and the records, papers and files in said action. In opposition thereto, appellant filed affidavits of Willard Livingstone, president of appellant corporation, and William G. Paul, president of the Los Angeles Stock Exchange.

After argument by counsel for both sides, as well as of amici curiae for appellant, the court granted the motion, and on October 17, 1947, summary judgment was entered against appellant for $7,087 and $852.24 interest.

Appellant seeks a reversal of such judgment, and also of the order denying its motion for leave to file its amended cross-complaint, urging (1) that the summary judgment was improperly granted because the affidavits of the parties clearly presented a triable issue of fact; and (2) that a "when, as and if issued" contract is not by its nature an installment purchase contract, and thus is not within the purview of section 8, of the Corporate Securities Act.

Section 437c of the Code of Civil Procedure, pursuant to the terms of which the instant judgment was entered, provides as follows:

". . . when an answer is filed in an action to recover upon a debt or upon a liquidated demand . . . or to recover an unliquidated debt or demand for a sum of money only arising on a contract express or implied in fact or in law . . . if it is claimed that there is no defense to the action or that the action has no merit, on motion of either party, after notice . . . supported by affidavit of any person or persons having knowledge of the facts, the answer may be stricken out or the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party,

by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . .

"*Contents of affidavits.* The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto.

"The affidavit or affidavits in opposition to said motion shall be made by plaintiff or defendant, or by any other person having knowledge of the facts, and together shall set forth facts showing that the party has a good and substantial defense to the plaintiff's cause of action . . . or that a good cause of action exists upon the merits. The facts stated in each affidavit shall be within the personal knowledge of the affiant, shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto. . . ."

The cross-complaint alleges that Livingstone & Company is a corporation engaged in the brokerage business in Los Angeles, and licensed as such; that in the year 1946, to wit: January 16 and February 6, said corporation and the cross defendants entered into oral agreements for the sale by the corporation to the cross-defendants of certain shares of the common stock of Gulf, Mobile and Ohio Railroad Company, "when, as and if issued"; a sum certain payable "not later than the second full business day following the date of said transaction, and the balance of the purchase price . . . payable at such time as the said shares were issued and available for delivery."

It is further alleged that cross-complainant delivered to respondents confirmations in writing of said oral agreements; that pursuant to such oral agreements certain sums of money were paid to cross-complainants in partial payment of such shares of stock; that "on June 25, 1947, the first day that said shares were issued by said corporation and available for delivery at Los Angeles, California," said cross-complainant offered to deliver said shares of stock to cross-defendants "against the payment of the balance due on the purchase price" of said shares of common stock; that notwithstanding such offer to deliver, cross-defendants "did not perform . . . and did not accept the tendered delivery of said shares of stock

nor pay the balance due thereon''; and that said cross-defendants have ever since and still refuse to accept delivery and to pay the balance of the purchase price thereon, although demand has heretofore been made for such balance. It is further alleged that after notice of the time and place of sale given by said cross-complainant to cross-defendants, the former sold 'said shares of stock on June 26, 1947, on the New York Stock Exchange, where said shares of stock were listed for trading, and credited the net proceeds from said sale to the accounts of said cross-defendants; that after crediting such accounts with the net proceeds of said sale, there remained due, owing and unpaid to cross-complainant a sum certain in accordance with the terms of said agreements, for which demand has been made and payment refused by said cross-defendants, which sum represents the difference between the amounts which the respective cross-defendants agreed to pay for the said shares of stock and the amount actually paid, plus the proceeds derived from such sale.

Wherefore, cross-complainant prayed for judgment (1) against cross-defendant Carl Grueninger for $2,174.30 and interest; (2) against cross-defendant William Grueninger for $1,462.19 and interest; (3) against cross-defendant Elizabeth S. Pierce for $1,461.57 with interest.

Respondents' demurrer to the foregoing pleading was sustained without leave to amend, upon the ground that the transaction disclosed therein was an installment contract and void under section 8 of the Corporate Securities Act. Shortly thereafter, the court denied appellant's motion to set aside the order sustaining the demurrer and to permit it to file its amended cross-complaint.

Not content to rely upon the ruling on demurrer, respondent Carl Grueninger then moved the court to strike the answer and for a summary judgment on the ground that appellant had no defense to the cause of action. This motion was supported by four affidavits: (1) Carl Grueninger, (2) William Grueninger, (3) Elizabeth S. Pierce, (4) Warner I. Praul.

The material facts set forth therein are to the effect that during the year 1946, the three affiants paid appellant certain sums of money ''on account of the purchase price'' of a certain number of shares of stock of the Gulf, Mobile and Ohio Railroad Company, ''when, as and if issued''; that on May 16, 1947, they rescinded the said transactions for the purchase of stock by signing notices of rescission which they

delivered to their counsel, Warner I. Praul, with instructions to him to deliver the same to appellant.

The affidavit of Mr. Praul is to the effect that on May 16, 1947, respondents executed and delivered to him certain notices of rescission with instructions to deliver the same to appellant; that he deposited such notices in the United States Postoffice at Los Angeles, California, and in response thereto, he received through the mail three letters from counsel for appellant dated May 23, 1947, copies of which were attached to said affidavit. The notices of rescission contained the following recital: "That this rescission of said contracts is made upon the ground that the consent of the undersigned thereto was obtained by fraud on your part."

In opposition to the motion, the affidavit of Willard Livingstone, president of appellant corporation, avers that appellant is a broker-dealer in securities and licensed as such under the laws of the State of California; that on January 16, 1946, and February 6, 1946, appellant entered into an oral agreement with respondents for the sale of common stock of the Gulf, Mobile and Ohio Railroad Company; that at the time such agreement was entered into the said shares of stock had not been issued, and "it was understood and agreed that said sale would be complete when, as and if said shares of stock were issued"; that "Pursuant to the terms of said oral agreement" it was understood and agreed by and between the parties thereto that respondents would deposit a sum certain with appellant "at that time solely for the purpose of securing compliance by said (respondents) with the terms of said contract, and it was further understood and agreed by and between the parties thereto, pursuant to the terms of said contract, that the full purchase price would be paid upon delivery of the said shares of stock." It is further averred that the required sums were deposited by respondents with appellant in order to secure compliance with the terms of the contract; that subsequently the stock was issued and appellant offered to deliver same to respondents upon the payment by the latter of the full purchase price thereof, but notwithstanding such offer, respondents did not perform said contract, did not accept the tendered delivery of the stock nor pay the full purchase price and still refuse to do so upon demand by appellant; that after due notice thereof, appellant sold the stock on June 26, 1947, on the New York Stock Exchange, where said shares of stock were listed for trading, for the account of respondents; that the net pro-

ceeds of such sale were credited to the accounts of respondents; that after crediting respondents with the net proceeds of such sale, there remains due, owing and unpaid a sum certain by each respondent, for which sum demand has been made and payment refused. It was also averred that all of the amounts ''deposited by Carl Grueninger, William Grueninger and Elizabeth S. Pierce, were deposited by Livingstone & Co., in a trustee bank account. That had said shares of stock not been issued, Livingstone & Co. agreed to return said deposits to Carl Grueninger, William Grueninger and Elizabeth S. Pierce.

''That each of the aforesaid transactions was a sale for cash. In the case of 'when, as and if' issued securities, the lapse of time between the initial commitment and the ultimate performance of the contract may be months or years rather than a few days. That the sum accepted from the plaintiff (Carl Grueninger) and his assignors (William Grueninger and Elizabeth S. Pierce) in each case was accepted to insure performance of the agreement and to protect Livingstone & Co. against the possibility that plaintiff or his assignors might not fulfill the terms of their contract, and not as a down payment upon the purchase price of the securities, which were not at that time issued and which might never have been issued. Each of said deposits was deposited by Livingstone & Co. in a trustee bank account. Upon the issuance of said securities, the entire purchase price became immediately due and payable, in full and in cash, with no agreement for deferred payment of any part of the purchase price. Livingstone & Co. thereupon applied the amount which had been deposited by the plaintiff and his assignors, in each case, as a part of said purchase price.

''That the consent of the said Carl Grueninger, William Grueninger and Elizabeth S. Pierce to the contracts referred to above was freely and voluntarily given, and your affiant denies that said consent ... was obtained by any act of fraud.''

This affiant also affirmed that it ''has been the custom and trade practice of the securities business to consider these transactions as cash sales, and contracts involving such sales have been entered into in accordance with this custom and trade practice.''

The affidavit of William G. Paul, president of the Los Angeles Stock Exchange, avers a familiarity with the customs and trade practices in the securities business in the State of California; ''that it has been the custom and trade

practice since 1929 . . . to the present time in California in cases of transactions involving when, as and if issued securities to require a deposit from the customer at the time the original commitment is entered into to insure the ultimate performance by the customer under the terms of such commitment contract. That this deposit has been required because the lapse of time between the initial commitment and the required performance thereunder may be of long duration during which time the value of the securities proposed to be issued may fluctuate widely.

"Further, it was at all times mentioned therein and still is the custom and trade practice in the State of California that upon the issuance of such securities the full purchase price immediately becomes due and payable and the amount deposited is applied thereon.

"That those engaged in the securities business in California have never considered such transactions as installment purchase contracts nor to involve the extension of credit of any kind for the payment of such securities but rather it has always been the custom and trade practice of those engaged in the securities business to consider these transactions as cash sales and contracts involving such sales have been entered into in accordance with this custom and trade practice. . . .

"That in 1930 and for several years prior thereto, an installment purchase contract in the securities business in California was known and commonly referred to as a contract whereby a broker sold securities which were then issued and outstanding to a customer and the customer at once became indebted for the full purchase price and thereby agreed to pay said full purchase price in a series of payments. That said series of payments was usually on a monthly basis with an initial payment of 20 percent.

"That the facts stated in this affidavit are within the personal knowledge of your affiant."

From the foregoing it is clear that the averments in the affidavits of the parties raise the question: What was the nature of the contract—did the parties thereto intend it as a cash transaction or as an installment purchase contract?

As stated by this court in *Grady* v. *Easley,* 45 Cal.App. 2d 632, 641 [114 P.2d 635] : "While 'Ordinarily, the only question presented upon an appeal from a summary judgment under section 437c is whether or not the trial court abused its discretion' (*Kelly* v. *Liddicoat,* 35 Cal.App.2d 559, 560 [96 P.2d 186], citing *Bank of America etc. Assn.* v. *Oil Well*

*Supply Co.*, 12 Cal.App.2d 265 [55 P.2d 885] ; nevertheless, 'The validity of the judgment is to be determined by the sufficiency of the affidavits considered upon the hearing of the motion.' (*McComsey* v. *Leaf*, 36 Cal.App.2d 132, 133 [97 P.2d 242].) After an exhaustive review of the subject the opinion in the last named case of *McComsey* v. *Leaf* announces the following rule at page 140 thereof: 'To warrant a summary judgment, there "must be a failure on the part of defendant to satisfy the court that there is any basis for his denial or any truth in his defense" (Cardozo in *Curry* v. *Mackenzie*, 239 N.Y. 267 [146 N.E. 375], and unless the defendant does so fail, the case shall proceed to a deliberate trial in the usual course. (*Krieger* v. *Dennie*, 123 Cal.App. (Supp.) 777 [10 P.2d ·820].) ' "

In *Slocum* v. *Nelson*, 72 Cal.App.2d 33, 37 [163 P.2d 888], it was stated: "A motion for a summary judgment presents the question as to whether any triable issue of fact is raised which might defeat or reduce the demand of the plaintiff. For the purposes of such a motion the facts alleged in the defendant's affidavits must be accepted as true. (*Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553 [122 P.2d 264] ; *McComsey* v. *Leaf*, 36 Cal.App.2d 132 [97 P.2d 242].) In the first of these cases the court said: 'The issue to be determined by the trial court in consideration of a motion thereunder is whether or not defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case.' In *McComsey* v. *Leaf*, the court quoted from a New York case as follows: 'The court is not authorized to try the issue but is to determine whether there is an issue to be tried . . . The defendant must show that he has . . . a plausible ground of defense, something fairly arguable and of a substantial character . . . that his denial or his defense is not false and sham but interposed in good faith and not for delay.' In *Baxter* v. *Szucs*, 248 Mich. 672 [227 N.W. 666], the general rule is thus stated: 'The province of the court, on motion for summary judgment, is to determine judicially whether there is an issue of fact which, if resolved in favor of defendant, would preclude a verdict for plaintiff in whole or in part of his demand.' "

In *Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553, 560 [122 P.2d 264], the following appears: "In the procedure here involved a liberal construction must be given to the pleadings as well as the affidavits of the party against whom

the motion is made, both being given attention. Plaintiff did not demur to the answer. It is not the purpose of the procedure under section 437c to test the sufficiency of the pleadings. It is stated in *Kelly* v. *Liddicoat*, 35 Cal.App.2d 559, 562 [96 P.2d 186] :

" ' . . . That section provides an entirely new procedure, as far as the codes of our state are concerned, the purpose of which is to eliminate all issues which have no basis in fact, no matter how well they may be pleaded in form. Under it, an answer may be stricken out, even though a perfect defense may be stated therein, unless the defendant by his affidavits shows facts to substantiate the defense.' And in *Perlman* v. *Perlman*, 235 App.Div. 313 [257 N.Y.S. 48, 50], the court, expressing the same thought conversely, said with respect to summary judgments: 'Even though the pleading itself be deemed insufficient, the motion must be denied if the affidavits show facts sufficient to constitute a defense entitling the pleader to defend. *Curry* v. *Mackenzie*, 239 N.Y. 267 [146 N.E. 375] . . . .' ' ''

Tested by the foregoing principles, we believe the affidavits presented by appellant show sufficient facts to constitute a defense to the action and that it is therefore entitled to a trial on the merits.

In view of the conclusions reached herein, the second point with respect to the nature of the contract will not be discussed, that being a question for the determination of the trial court.

For the reasons stated, the judgment and order appealed from are, and each of them is, reversed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied March 8, 1949, and respondents' petition for a hearing by the Supreme Court was denied April 21, 1949. Traynor, J., voted for a hearing.