[Civ. No. 19550.   Second Dist., Div. One.   Oct. 22, 1953.]

M. J. POOCHIGIAN, Appellant, v. LESTER LAYNE et al., Respondents.

Morris Lavine and Albert E. Isenberg for Appellant.

Horton & Horton, Joseph K. Horton and Russell A. Barker for Respondents.

DRAPEAU, J.—Plaintiff brought the instant action for specific performance of a lease of real property, or in the alternative for $100,000 damages.

The lease was executed October 18, 1949, for a term of one year commencing October 15, 1949, and ending October 14, 1950. It provided for a monthly rental of $600 for the premises which were unimproved, and for the construction of a building thereon by lessee. It gave to plaintiff the exclusive right to purchase the leased premises by depositing $90,000 cash in any bank in Whittier, California, on or before October 14, 1950. And in the event he failed to exercise such option, plaintiff agreed to "surrender the possession of the premises and any building that may have been constructed thereupon to Lessors."

By his complaint, plaintiff alleged the terms of the lease, the commencement of construction of the contemplated building for which he expended $50,000 and obligated himself for an additional $140,000. Also, the tender of the purchase price of $90,000 prior to October 14, 1950, and the refusal of defendants to accept it. That when he made such tender, defendants advised him to delay making payment until he could obtain funds at a lower rate of interest. He further alleged demand upon defendants for performance; his offer to compensate them for loss occasioned by his delay; refusal of both demand and offer by defendants. He also alleged performance of all conditions "of said agreement on his part, and has always been . . . and is now ready and willing to . . . fully perform and carry out its terms and conditions."

The answer admitted the commencement of construction of the building on the leased premises prior to December 18, 1949, but on information and belief denied that plaintiff had expended $50,000 or obligated himself to expend any further sums. It also denied tender or offer by plaintiff to pay the purchase price and alleged plaintiff consistently refused and failed to make such tender or offer.

As an affirmative defense, defendants alleged the non-payment by plaintiff of rentals provided in the lease; filing of mechanics' liens for $92,000 because of indebtedness incurred by plaintiff in constructing the building, and his fail-

ure to pay or settle the same; failure of plaintiff to tender the purchase price and his refusal to surrender possession of the leased premises on October 15, 1950; and that therefore defendants were forced to file a suit in unlawful detainer to recover possession of said property. That at the trial in that action, all claims here asserted by plaintiff were litigated and judgment was rendered on January 29, 1951, in favor of defendants.

Thereafter, defendants moved for a summary judgment under section 437c of the Code of Civil Procedure, "on the ground that the within action has no merit."

From the judgment of dismissal following the granting of the motion, plaintiff appeals.

Appellant urges that the trial court erred in granting the motion for summary judgment where a triable issue of fact was presented.

Section 437c, Code of Civil Procedure, so far as material here, reads as follows:

"In superior courts . . . when an answer is filed in an action . . . for specific performance of a contract in writing for the sale or purchase of property . . . if it is claimed that . . . the action has no merit, on motion (of defendant), after notice of the time and place. thereof in writing served on the other side at least 10 days before such motion, supported by affidavit of any person or persons having knowledge of the facts . . . the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact."

It is now settled law that the validity of a judgment entered pursuant to said code section "is to be determined by the sufficiency of the affidavits considered upon the hearing of the motion." (*McComsey* v. *Leaf*, 36 Cal.App.2d 132, 133 [97 P.2d 242].

And, as said in *Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62]: "In passing upon a motion for summary judgment, the primary duty of the trial court is to decide whether there is an issue of fact to be tried. If it finds one, it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived.

By an unbroken line of decision in this state since the date of the original enactment of section 437c, the principle has become well established that issue finding rather

than issue determination is the pivot upon which the summary judgment law turns. (*Security First Nat. Bank* v. *Cryer*, 39 Cal.App.2d 757 [102 Pac.2d 66]; *McComsey* v. *Leaf*, 36 Cal.App.2d 132 [97 Pac.2d 242]; *Kelly* v. *Liddicoat*, 35 Cal.App.2d 559 [96 Pac.2d 186]; *Shea* v. *Leonis*, 29 Cal. App.2d 184 [84 Pac.2d 277]; *Bank of America* v. *Casady*, 15 Cal.App.2d 163 [59 Pac.2d 444].)''

The motion herein which was heard on June 4, 1952, was supported by affidavit of defendant Lester Layne, to wit:

That on October 18, 1949, defendant lessors were owners in fee of the property in question, and entered into a lease with plaintiff which contained an option to purchase the premises for $90,000, to be deposited in escrow in cash on or before October 14, 1950, in any bank in Whittier, California; that at no time on or before October 14, 1950, or at any other time, was the purchase price tendered or offered to defendants or deposited in escrow.

That in the unlawful detainer action brought by defendants against plaintiff for possession of the leased premises, plaintiff testified on January 12, 1951, in the presence of affiant that the $90,000 in payment of the purchase price was never at any time tendered to affiant; that at no time prior to the 14th day of October, 1950, or at any other time, did defendants refuse to accept any tender of the $90,000 or refuse to receive said money; that no such tender has ever been made; and that defendants have been ready, able and willing at all times on and prior to October 14, 1950, to convey the premises to plaintiff as in the contract provided.

Affiant also averred that defendants never advised plaintiff against making payment of the purchase price or to delay making it until he could obtain funds at a lower rate of interest; but that at all times they besought plaintiff to carry out the terms of the contract. That at the trial of the unlawful detainer action, plaintiff testified under oath in the presence of affiant, that his failure to procure the loan ''was due to the fact that the loan offered was onerous,'' and that he ''could not have complied with the terms thereof''; that he did not have the money with which to pay the purchase price, and never did tender the same to defendants. In this connection, it is averred that plaintiff testified in said action that in addition to the $90,000 purchase price, he would have to pay about $90,000 for unpaid bills and as well $5,000 in commissions. As a result, the loan of $150,000 was about $35,000 short of providing enough money to clear the property.

Defendant Layne further avers that plaintiff incurred indebtedness for labor and material used in constructing the building on the leased premises for which mechanics' liens were filed in an amount of $92,280.74 which defendants had to settle in order to protect their property. In addition, plaintiff failed to pay the monthly rental amounting in the aggregate to $3,000, and also collected $1,465 upon leases prior to October 14, 1950, no part of which has been repaid to defendants.

Mr. Merton G. Wray also supported the motion by affidavit to the effect that he never advised plaintiff not to pay the purchase price or to delay making such payment until funds could be obtained at a lower rate of interest, but that he "did at all times on and prior to the 14th day of October, 1950, request and seek plaintiff to carry out the contract on his behalf."

In opposition to the motion, the affidavit of plaintiff avers that prior to October 14, 1950, he spoke with Mr. Wray and told him he could get the necessary funds from a lending agency but would have to pay 10 per cent interest and a bonus of $5,000; but that "said attorney acting on behalf of said defendants informed plaintiff not to do so, but that if he was going to pay any $5,000 bonus, to pay the same to Mr. and Mrs. Layne."

Also, that he applied to Guardian Insurance Company for a loan to cover the purchase price of the leased premises; that said company forwarded documents to defendants to be signed and returned so that the loan could be completed; that defendants did not return the documents to the company and "for that reason the loan was not obtained."

Further, that excerpts of testimony from the unlawful detainer trial quoted in defendant Layne's affidavit were not the complete testimony of plaintiff at that time and place; that other questions were asked and other answers given which explained "the reason for the $90,000 not being tendered and explained the request for loan to obtain said $90,000 and the offer to defendants to obtain said money and purchase said property." That affiant expended $50,000 of his own funds in construction of the building on the premises and received no benefit therefor. "The sums received for advance rentals were paid back into the building for the construction thereof. That at the present time, the defendants have the building, the premises, the leases and all the benefits derived therefrom and affiant has nothing."

The lease required tender of the purchase price of the premises on or before October 14, 1950. In addition, appellant agreed that if he failed to exercise the option to purchase that he would "on the expiration date of this lease, to-wit: the 14th day of October, 1950, quietly and peaceably surrender the possession of the premises and any building that may have been constructed thereupon to Lessors."

Appellant admits that tender of the purchase price was not made and the affidavit in support of the motion for summary judgment discloses that respondents had to bring an action in unlawful detainer to regain possession of the leased premises.

On his appeal, appellant asserts that his affidavit in opposition to the motion pleaded "an estoppel and waiver under equitable principles" and therefore, it presented an issuable fact to be tried by the court.

As hereinabove noted, respondents' affidavit recited in detail the testimony of appellant given at the trial of the unlawful detainer action.

In his affidavit in opposition thereto, appellant did not refute these averments except to state that the testimony as shown in respondents' affidavit was not "the complete testimony of affiant at said time and place."

In the unlawful detainer action which involved the right of respondents to possession of the leased premises, it was necessary for the court to determine whether appellant had exercised his option to purchase.

Respondents here argue that their affidavits show that the judgment in the previous action between the same parties is res judicata as to the instant proceeding. In respondent Layne's affidavit it is averred that the unlawful detainer action was tried on January 12, 1951; that the court determined that respondents were entitled to possession of the premises; that judgment to that effect was duly entered on January 29, 1951; that said judgment has not been appealed from and it is now final.

██ "The doctrine of res judicata is that an existing final judgment on the merits of a cause rendered by a court of competent jurisdiction is conclusive of the rights of the parties thereto and of their privies on all material issues which were tried and determined and upon all issues which might have been properly tendered therein, in all subsequent actions or suits in any tribunal of concurrent jurisdiction involving the same points directly or indirectly. (Citing authorities.)"

*Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913, 918 [132 P.2d 12].

■ In the case of *Gosnell* v. *Webb,* 66 Cal.App.2d 518, 521 [152 P.2d 463], the court applied the doctrine of res judicata to a motion for summary judgment under section 437c, Code of Civil Procedure, and held as follows:

''The parties who were before the court when the appeal was considered are the same parties who are before the court in the present action and they are bound by the previous ruling which disposed of the issues now presented. A matter which has been adjudicated by a court of competent jurisdiction must be deemed to have been finally and conclusively settled if it arises in any subsequent litigation between the same parties. The defense of res judicata, which is presented in the answer and in the affidavit of defendant, must be sustained.''

■ An examination of the record on appeal discloses that no facts were presented to the trial court by the affidavits of the parties which were ''sufficient to present a triable issue of fact,'' and that the court did not err in granting the motion for summary judgment.

■ Section 437c, *supra,* requires that notice of motion be served on the other side ''at least ten days before the motion.'' Appellant urges that here ''The service was by mail, and therefore was less than ten (10) days from the date of the hearing.''

The record shows that counsel for both parties had offices in the city of Los Angeles; that notice of the motion together with affidavits in support thereof were served by mail pursuant to section 1013, Code of Civil Procedure, by depositing them in the United States Post Office at Los Angeles on May 23, 1952, addressed to counsel for appellant. The motion was noticed for June 3, 1952, and was actually heard on June 4th. Computed by excluding the first day and including the last (Code Civ. Proc., § 12), the period of time between May 23 and June 4, 1952, was 12 days. This was ample compliance with the code section.

The constitutionality of section 437(c), *supra,* was upheld in *Cowan Oil & Ref. Co.* v. *Miley Petroleum Corp.,* 112 Cal. App.Supp. 773, 777 [295 P. 504], and in *Bank of America* v. *Oil Well Supply Co.,* 12 Cal App.2d 265, 270 [55 P.2d 885].

■ Respondents must be sustained in their argument that no appeal lies from the order denying appellant's motion for reconsideration of the judgment.

■ This for the reason that "where there is a right of appeal from a judgment or order, a party cannot ordinarily take an appeal from a subsequent order denying a motion to vacate the judgment or order complained of, under such circumstances that the motion merely calls upon the court to repeat or overrule the former ruling on the same facts." 3 California Jurisprudence 2d 490, section 57.

■ If considered as a motion for a new trial, it is not an appealable order. See *Bank of America* v. *Oil Well Supply Co.*, 12 Cal.App.2d 265, 271 [55 P.2d 885], where it is stated:

". . . appellant, in the lower court, moved to vacate the order for summary judgment, which motion was denied, and an effort is made to appeal from this order as well as from the order granting the motion for summary judgment. These orders are not appealable. Appellant's only remedy under the circumstances is an appeal from the judgment. The disposition of the action by the trial court was a trial under the law and the so-called motion to vacate the order granting the summary judgment was, in legal effect, a motion for a new trial. This motion was denied and the order denying such a motion is likewise not appealable."

For the reasons stated, the judgment is affirmed. The purported appeal from the order denying motion for reconsideration of the judgment is dismissed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1953.