[Civ. No. 18831. First Dist., Div. One. Nov. 28, 1960.]

OLIVE BENNETT et al., Appellants, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

Morris Lavine and Leander L. James for Appellants.

Tobin & Tobin, Sullivan, Roche, Johnson & Farraher and Brobeck, Phleger & Harrison for Respondents.

TOBRINER, J.—Appellants appeal in this case from a summary judgment rendered after remittitur upon reversal by the Supreme Court in *Bennett* v. *Hibernia Bank* (1956), 47 Cal.2d 540 [305 P.2d 20]. The Supreme Court reversed the judgment of the trial court entered upon sustaining a demurrer to the amended complaint.

Since the Supreme Court in its opinion summarizes the complaint, we do not do so here. The basic facts as to the history of the bank parallel those set forth in *Spencer*. (*Spencer* v. *Hibernia Bank* (1960), *ante,* p. 702 [9 Cal. Rptr. 867].) As to appellants' status, the opinion points out, "Curtin became a member of Hibernia on October 27, 1860, when he signed the by-laws, paid the entrance fee, made a deposit of $3,500 and received a passbook showing the amount of his deposit." (*Bennett,* p. 546.) The amended

complaint alleges, ''on information and belief,'' that Curtin signed the agreement to become members provided for in the 1864 by-laws.

After reversal by the Supreme Court respondents took certain depositions, filed their answer to the amended complaint and, pursuant to section 2033 of the Code of Civil Procedure, made requests for admissions to which appellants filed their responses. Among other matters respondents requested admissions to the following questions: ''42. Plaintiffs [appellants] have no extrinsic evidence bearing on (a) the interpretation of Article 4 of Hibernia's by-laws adopted September 29, 1864; (b) The application of said Article 4 to those who were members of Hibernia prior to the adoption of said Article 4. 43. Plaintiffs [appellants] have no extrinsic evidence bearing on the reasonableness of Hibernia's by-law adopted in 1868 reading 'No one shall be deemed a member whose account is once closed,' as applied to one who was a member prior to its adoption.'' Appellants' attorney responded to these requests, stating, ''admits the statements contained in the Request for Admissions 42 and 43 but reserve to themselves the right to produce by deposition or otherwise such extrinsic evidence as referred to in Requests for Admission 42 and 43 as such deposition or search or other investigation may hereafter produce and without any waiver to the future production of such extrinsic evidence.''

Based upon ''the 'First Amended Complaint for Declaratory Relief,' the Requests for Admissions Nos. 42 and 43 . . . [and] the Plaintiffs' [appellants'] Response to said Requests for Admissions,'' respondents filed their motion for summary judgment. In support of the motion respondents also filed an affidavit of Cyril R. Tobin, which contained the verbatim text of the ''Agreement to Become Members,'' that ''does not appear in the record,'' when the Supreme Court adjudicated the case. (*Bennett*, p. 553.)

In opposition to respondents' motion, Morris Lavine, counsel for appellants, filed two affidavits. The first affidavit states in part that the Tobin affidavit ''does not set forth that there is no such extrinsic evidence, nor does it disclose any minutes of the Hibernia Bank showing its interpretation by the conduct of its officers and directors or otherwise of the by-laws. . . .'' It further alleges on information and belief ''that substantial payments have been made either by the bank or by its officers or directors to persons or their heirs who held memberships in the original Hibernia Bank . . .

and that such conduct by such officers and directors or principal stockholders of the bank would constitute extrinsic evidence of the interpretation to be placed upon the by-laws of the Hibernia Bank." The affidavit states that "the deposition of Joseph B. Keenan shows payment of $2,500 by the bank for his interest acquired from his deceased father." It concludes with a prayer that affiant "be given an opportunity to produce such extrinsic evidence at the trial."

The second Lavine affidavit incorporates the testimony of Joseph B. Keenan given in a deposition of April 3, 1957, to the effect that he received from "the bank" in the year "about 1932 or something like that" the sum of $2,500 for the "original bank book" of his father. Upon information and belief, affiant further states that the decree in the estate of James M. Donahue, an officer and director of the bank, shows distribution of his savings account with Hibernia and "all rights appertinent [sic] to said deposits and pass book, including all rights . . . in the reserve of and other funds of said bank. . . ." Likewise, "Affiant is informed and believes and therefore alleges that the bank itself paid . . . [certain] sums for the interests . . . of persons" named Chambers, Doyle, Kepner, Ormant and Hatch; "[t]hat the Hibernia Savings and Loan Society also paid $175,000.00 for the interest of Thomas A. Mulkahy"; that "affiant is also informed and believes" the society "paid $50,000.00 . . . for . . . the interest of Thomas A. Driscoll, deceased; . . . that affiant is informed and believes that the bank paid . . . approximately $95,000.00 for the interest of Mary Kate O'Brien. . . ." The affidavit also avers that Callaghan Curtin "was an original member" of the society and paid $3,500 for his membership.

Respondents filed two affidavits in support of their motion for summary judgment which we now analyze. The first, an affidavit of David J. Barry, a vice-president and trust officer of the bank, attested that "On October 27, 1860, one C. Curtin opened a savings account with Hibernia Savings and Loan Society by making a deposit of $3500." The second, a supplemental affidavit by Cyril R. Tobin, stated that as attorney for the bank he was "personally familiar with the fact that from time to time various persons have asserted claims" against the bank; that "[e]ach and every claim has always been denied." One of such claims was that of Joseph B. Keenan; "[i]n 1932 the said claim" was compromised and

settled. The affidavit further alleged that after the final judgment in the in rem suit of the bank rendered on January 7, 1946, a number of persons filed motions to set aside the default judgment, among whom were Mulcahy, Murphy, DeCou, Doyle, Ormant, Chambers and Kepner, who were persons referred to in the Lavine affidavit. The affidavit states that these parties had received payment in compromise and settlement of their claims. It finally states that as to the Driscoll matter, referred to in the Lavine affidavit, "A payment was made . . . in compromise and settlement of said claim. . . ."

Pursuant to respondents' motion, the court granted a summary judgment, stating that none of the appellants claiming to derive rights from Callaghan Curtin ever had any interest in Hibernia's property, assets or reserve fund; that membership in Hibernia of 1864 was not transferable or descendible; and that appellants are not entitled to set aside the judgment in *Hibernia* v. *Tobin* (San Francisco Superior Court No. 345334), which determined in rem the members of Hibernia and those having an interest therein.

Appellants' bases for appeal lie in the alleged following errors: (1) The affidavit of respondents and the request for admissions are insufficient grounds for granting summary judgment; (2) the affidavit of respondents is insufficient on which to predicate summary judgment; (3) appellants' counteraffidavit and "the testimony of Joseph B. Keenan taken by deposition and set forth" in the counteraffidavits sufficiently raise questions of fact; (4) the "so-called judgment . . . invade [*sic*] the province of the court and jury and deny plaintiffs' [appellants'] right of trial by jury"; and (5) the "procedure had in this case" would deny appellants due process of law and take their property rights without due process of law. We discuss each of these issues *infra.*

The Supreme Court left the case in the posture that the possibility of extrinsic evidence upon the issues as to whom article 4 of the 1864 by-laws applied, and whether the 1868 amendment was unreasonable, prevented the conclusion that appellants as a matter of law had no interest in respondent bank. If appellants' five points will not stand their position collapses under the weight of the Supreme Court's decision and our construction of these two crucial by-laws this day in *Spencer* v. *Hibernia Bank*. Indeed, appellants have incorporated appellants' brief in that case; we have treated

the issues in both concurrently, and we believe this court may, where necessary, take judicial notice of the record. (*City of Los Angeles* v. *Abbott* (1932), 217 Cal. 184, 193 [17 P.2d 993]; *Hammell* v. *Britton* (1941), 19 Cal.2d 72 [119 P.2d 333].) We proceed to examine each of the points.

■ As to the first point, appellants state, "There is no provision in section 437c, C.C.P., for summary judgment to be based upon requests for admissions and admissions." The recent decision of this court, speaking through Justice Duniway, in *Buffalo Arms, Inc.* v. *Remler Co.* (1960), 179 Cal.App.2d 700, 702-703 [4 Cal.Rptr. 103], disposes of this contention: The "motion for a summary judgment . . . anticipated by 25 years the discovery sections recently added to the Code of Civil Procedure, sections 2016-2035. Their addition to our law should make the summary judgment procedure more useful than it has been heretofore. When discovery, properly used, makes it 'perfectly plain that there is no substantial issue to be tried' . . . section 437c, Code of Civil Procedure, is available for prompt disposition of the case. In the present case, the plaintiff properly relies in part on defendant's sworn answers to plaintiff's requests for admissions, under Code of Civil Procedure, section 2033."

■ Appellants' exposition of their second point, that "The affidavit of the defendants [respondents] is wholly insufficient on which to predicate . . . summary judgment," consists of nothing more than a statement of general principles regarding summary judgment. As to the Tobin affidavit, appellants make the cryptic statement, included under the first heading of the brief, rather than the instant one, "It does not appear that Mr. Tobin is the custodian of the records, although he does state that part of his duties as an attorney was to be familiar with the records. . . ." The affidavit did no more than set out *in haec verba* the agreement to become members. Whether appellants are attacking the authenticity of the content of the agreement, the fact that the original agreement was not introduced, or a possible failure to comply with section 1953f of the Code of Civil Procedure is immaterial. The wording of the agreement does not provide for that ratification of the 1864 by-laws which the Supreme Court envisaged, and which respondents obviously desired; it has no bearing here.

■ We turn to a consideration of appellants' third position: their contention that the counteraffidavits raise questions of fact. The first affidavit of Morris Lavine, predicated upon

information and belief, however, succumbs to respondents' charge that it "is incompetent as hearsay and conclusory." As we have pointed out in *Spencer,* an affidavit based upon hearsay in a proceeding for summary judgment is "of no value in determining whether there were issuable questions of fact." (*Whaley* v. *Fowler* (1957), 152 Cal.App.2d 379, 382-383 [313 P.2d 97]. To the same effect: *Schessler* v. *Keck* (1956), 138 Cal.App.2d 663, 668 [292 P.2d 314]; *Maltby* v. *Shook* (1955), 131 Cal.App.2d 349, 351 [280 P.2d 541]; *Shea* v. *Leonis* (1938), 29 Cal.App.2d 184, 188 [84 P.2d 277].)

The second Lavine affidavit, in alleging payments by Hibernia for named interests, does not advance appellants' position. It fails for the same reason as the first.

The portions of the affidavit as to the Donahue estate and the O'Brien interest rest upon information and belief. The remaining portion of the affidavit, affiant's report of what the Keenan deposition states, is likewise hearsay; the Keenan deposition was not offered as evidence in the trial court and is not before this court.

Mr. Lavine's contention that his affidavits, upon information and belief, are sufficient because as an attorney, he is in a representative capacity within the meaning of section 437c cannot stand. This section, in part, reads "When the party resisting the motion appears in a representative capacity, such as a trustee, guardian, executor, administrator, or receiver, then the affidavit in opposition by such representative may be made upon his information and belief." The specified representatives constitute an exclusive list; to hold that attorneys are included would, in effect, repeal the requirement that the affidavit contain facts as to which the affiant could testify competently.

The allegation in the affidavit that Curtin paid $3,500 for a membership in Hibernia in 1860, apparently based upon the affidavit of Callaghan Curtin of September 19, 1914, attached to respondents' "Answer to First Amended Complaint" as Exhibit 6 does not find confirmation in the affidavit. The affidavit shows that Curtin deposited that sum in the bank, not that he purchased membership with it.

Appellants' fourth and fifth points are mere restatements of the basic issues of the case. Their fourth assertion that the judgment invades the province of the court and jury and denies the right of trial by jury recasts the argument that a question of fact is presented. Since we have pointed out no such issue exists, the argument falls. (*Bank of America*

v. *Oil Well Supply Co.* (1936), 12 Cal.App.2d 265 [55 P.2d 885]; *Poochigian* v. *Layne* (1953), 120 Cal.App.2d 757, 764 [261 P.2d 738].)

 Similarly, the argument that appellants' property rights have been taken without due process of law assumes the existence of such property rights. We have pointed out *supra* and in *Spencer* that appellants have failed to establish such property rights.

We have examined each of the five propositions of appellants and find them wanting. These assertions make no case, and the principles set out in *Spencer* as well as the underlying rulings of the Supreme Court's decision in *Bennett* v. *Hibernia Bank, supra,* 47 Cal.2d 540, control.

We affirm the judgment.

Bray, P. J., and Ford, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 25, 1961. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.