[Civ. No. 12792. First Dist., Div. Two. May 29, 1945.]

ZORA A. LOVELAND, Appellant, v. CITY OF OAKLAND et al., Respondents.

Frank E. McGuire and Louis B. DeAvila for Appellant.

F. B. Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondents.

GOODELL, J.—This is an appeal from a summary judgment dismissing a petition for a writ of mandate.

Section 103a of the Oakland Charter provides that if a retired fireman shall die by reason of an injury for which he was pensioned, his pension shall not cease but shall continue and shall be paid to his widow to whom he was married at the time of such injury.

Victor F. Loveland had been retired on a pension on June 1, 1938, because of an injury received on September 19, 1937, in line of duty as a lieutenant in the Oakland Fire Department. He died on December 23, 1943, and the petitioner, his widow, invoked section 103a in an application to the Board of Trustees of the Firemen's Relief and Pension Fund. Her application was denied and she filed a petition for a writ of mandate to compel the board to grant it. An alternative writ was issued, commanding the defendants to grant the pension or show cause on April 17, 1944, why they had not done so. Thereupon defendants served and filed a notice that on April 12, 1944, they would move to dismiss the petition on the ground that the action was without merit. A general and special demurrer to the petition, filed by the respondents, was never argued but was dropped from the calendar. On April 12, which was five days before the return day on the writ, the motion was presented and submitted, and on June 23, 1944, was granted.

The motion was made "upon the ground that the action herein has no merit in that petitioner's deceased husband, the continuance of whose pension she seeks, secured a final decree of divorce from said petitioner on January 7, 1938, approximately five years prior to his death." An affidavit setting forth the entry of the final decree on that date accompanied the motion papers. The petitioner filed a counter-affidavit showing that on March 4, 1938, the parties had remarried. Accordingly, there was an interval of 56 days between the time of Victor's injury on September 19, 1937 (which was over eight months after the entry of the interlocutory decree on December 31, 1936; see *Estate of Dargie,* 162 Cal. 51 [121 P. 320] ; *Estate of Lee,* 200 Cal. 310 [253 P. 145]) and his death (when petitioner was his wife) during which interval she was *not* his wife. The motion papers showed also that these facts had been laid before the board.

The motion to dismiss was made under section 437c, Code of Civil Procedure, and not under any procedure prescribed

for mandate cases by sections 1084-1097 of that code. It is apparent that the purpose of the motion was to get before the court at the threshold a legal point which could not be raised by demurrer, and to obtain, if possible, a ruling thereon before the time arrived to answer the petition, for it was noticed for hearing and heard five days before the return day on the writ. The result of the ruling was to bring petitioner's case to a sudden halt without a hearing on the demurrer, without the filing of a return or answer (Code Civ. Proc., § 1089) and without a hearing such as is required in mandate proceedings (Code Civ. Proc., §§ 1087, 1088, 1090, 1091, 1094).

Petitioner's counsel state her grievance rather broadly thus: "All we ask here and now is that we be given an opportunity to present the facts which we believe will prove all our allegations."

█ Section 437c provides that a motion for summary judgment may be made "In superior courts and justices' courts of Class A and municipal courts *when an answer is filed* in an *action* to recover upon a *debt* or upon a *liquidated demand* . . . or to recover an *unliquidated debt or demand for a sum of money only* arising on a contract express or implied in fact or in law . . . if it is claimed that there is no defense to the action or that the action has no merit. . . ." (Emphasis ours.) As far as the language of the section goes, special proceedings in general, and mandate in particular, are not included. The section seems to apply, in the first place, only to *actions,* and only to such actions as are of the restricted types which the Legislature was careful to specify. The respondents contend, nevertheless, that section 437c applies in mandate. They say: "The instant proceeding is essentially a demand for a sum of money only, claimed due upon a contract within the provision of section 437c," and further "a pension such as here involved constitutes a part of the compensation of the officer and as such is a part of his contract of employment." In support thereof they cite *Casserly v. City of Oakland,* 6 Cal.2d 64 [56 P.2d 237], and *Sweesy v. Los Angeles etc. Board,* 17 Cal.2d 356 [110 P.2d 37]. Those cases and several others so hold, but they deal with the status of the officer himself and *his* contract with the municipality. His widow has no contract. Whatever pension rights *she* gets come into being only when her husband's contract with the municipality is terminated by his death. Further, it is

difficult to see how this proceeding can be "a demand for a sum of money only" when it appears that the board has refused to recognize the petitioner's right to a pension, and the very purpose of this proceeding is to compel such recognition. Until her basic right is first established the petitioner cannot sue for any debt, liquidated or unliquidated, arising out of contract or otherwise. (See 20 Cal.Jur. § 7, p. 1001.) The respondent's contention is answered by the case of *Sheehan* v. *Board of Police Commissioners,* 188 Cal. 525, 532 [206 P. 70], as follows: ". . . the sole purpose for which the petitioner could institute, and, in fact, did institute, his *mandamus* proceedings was that of procuring an adjudication of his right to a writ of mandate directing said board to perform its official duty by the issuance of a warrant for his unpaid pension. It was not, and could not be, the procurement of a money judgment either against said board of police commissioners or against said municipality, since the procurement of such a judgment was not within the scope and purposes of such a proceeding." And at page 535 the court says: "The writ of mandate in this state is an independent proceeding having for its purpose the compulsion of an act which the law specially enjoins as a duty resulting from an office, trust, or station. *It has none of the characteristics or functions of a civil action for the collection of a debt."* (Emphasis ours.)

 While the respondents contend that section 437c is applicable, they did not, in this case, follow the plain provisions of that section. Their motion was heard five days before their answer was due. There was no answer on file then, or when the court ruled, and there is none on file now. The section says the motion may be made "when an answer is filed," meaning, of course, that it cannot be made *until* an answer is filed. (Compare *Johnston* v. *Baker,* 167 Cal. 260, 264 [139 P. 86].) The reason for this provision is obvious, for no court can tell what the issues are in any case until the answer comes in. "The affidavits on a motion for summary judgment do not constitute a second set of pleadings in the action. Their purpose is only to show whether the issues apparently made by the formal pleadings are genuine, whether each party has competent evidence to offer which tends to support his side of the issue. On the hearing of such a motion no issues are tried, but the inquiry is limited to the question whether there is an issue to be tried." (*Garden-*

*swartz* v. *Equitable etc. Society,* 23 Cal.App.2d Supp. 745, 752 [68 P.2d 322] (citing cases.) "Issue finding rather than issue determination is the pivot upon which the summary judgment law turns." (*Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62].) The Walsh case also holds in so many words that if the court finds an issue of fact "it is then powerless to proceed further, but must allow such issue to be tried. . . ." For these reasons it is evident that the respondents' claim that the filing of the demurrer is a substantial compliance with the statute cannot be sustained. As said in *Romero* v. *Snyder,* 167 Cal. 216, 221 [138 P. 1002], with respect to a somewhat similar claim: "There is no force in the argument of plaintiff that for the purposes of this section a demurrer is deemed to have the same effect as an answer. We must suppose that the legislature meant exactly what the words express."

 Next it is argued by the respondents that the provisions of section 437c are made applicable by section 1109, Code of Civil Procedure, which reads: "Except as otherwise provided in this title, the provisions of part two of this code are applicable to and constitute the rules of practice in the proceedings mentioned in this title." Section 1109 is found in the title dealing with the writs of review, mandate and prohibition, which are "special proceedings of a civil nature," and section 437c is in part two of the code. Respondents cite numerous cases where the procedure of ordinary civil actions has been held adaptable to mandate, and that may be readily conceded. The effect and scope of section 1109 is discussed at some length in *Scott* v. *Superior Court of Los Angeles County,* 83 Cal.App. 25, 30 [256 P. 603], where it is said: "While it is true that generally the rules of practice are the same in proceedings in mandate as in civil cases, this being expressly provided in section 1109 . . . still, that very section provides that such rules may not be identical, and anticipates exceptions where they are not the same. . . . *Apparently the pleadings of the parties in mandate constitute an outstanding exception to the rule above mentioned. Special provisions are made for such pleadings.* These are contained in chapter II, title I, of the Code of Civil Procedure, and the whole scheme is set up in sections 1089, 1091 and 1094 thereof. . . ." (Emphasis ours.) An examination of these provisions will readily show that the pleadings

in mandate proceedings are unique, and entirely different from those prescribed for ordinary civil actions; the practice is likewise quite different. Section 1088 provides: . . . The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not.'' Section 1089 provides that on the return day the respondent ''may answer the petition under oath, in the same manner as an answer to a complaint in a civil action.'' Section 1090 provides that if the answer raises an issue of fact the court may in its discretion order the question tried by a jury. Section 1091: ''On the trial, the applicant is not precluded by the answer from any valid objection to its sufficiency, and may countervail it by proof either in direct denial or by way of avoidance.'' It has been held that in mandate, issues of law as well as of fact may be raised by the answer. (*Scott v. Superior Court of Los Angeles County*, 83 Cal.App. 25, 31 [256 P. 603.].) In mandate the petitioner may file a reply to the answer, in other words a replication, a pleading unknown in civil actions in California. (*Scott v. Superior Court of Alameda County*, 205 Cal. 525 [271 P. 906].) ''In a proceeding for the writ of mandate affirmative allegations of the answer, if not demurrable, are to be taken as true unless they are countervailed by proof presented by the petitioner.'' (*Vanderbush v. Board of Public Works*, 62 Cal.App. 771, 775 [217 P. 785], citing *McClatchy v. Matthews*, 135 Cal. 274 [67 P. 134].) In *Fox v. Workman*, 6 Cal.App. 633, 635 [92 P. 742], it is said: ''The application of this section [1091] leads to the conclusion that if the affirmative allegations of the sworn answer present matters material to the issue before the court and are not controverted, either by pleading or proof, they are sufficient to support the judgment of the court, although no evidence be taken to support them. . . . *To this extent, then, the answer may be considered as if it were evidence.*'' (Emphasis ours.) Section 1094: ''If no answer be made, the case must be heard on the papers of the applicant. If the answer raises only questions of law, or puts in issue immaterial statements, not affecting the substantial rights of the parties, the court must proceed to hear or fix a day for hearing the argument of the case.'' From this examination of the mandate sections it is clear that a system of pleading peculiar to that subject has been set up by the Legislature.

There is still another reason why, in our opinion, it could

not have been the legislative intent (by cross-reference or otherwise) that section 437c should apply to mandate proceedings. That section is made available only ''In superior courts and justices' courts of Class A and municipal courts.'' Consequently in an original proceeding in mandate in the Supreme Court or District Court of Appeal such proceeding could not be summarily halted, while (if respondents are right) it could be in the superior court. Yet all three courts in original proceedings have coordinate and concurrent jurisdiction (*Santa Cruz etc. Co.* v. *Board of Supervisors,* 62 Cal. 40, 41; *Cohn* v. *Isensee,* 45 Cal.App. 509, 510 [188 P. 278]).

Section 103a of the charter provides that a fireman's widow is not entitled to a continuation of his pension unless his death occurs ''by reason of the bodily injury for which he was pensioned.'' The petition alleges *inter alia* that the death was the result of such injury. The burden of proof is of course on the petitioner (16 Cal.Jur., § 67, p. 869). In their brief the respondents say ''whether his death was the result of such injury is, of course, a question of fact which can only become material in the event the judgment herein is reversed. We deny that such death was the result of the said injury.'' This means, of course, that the answer would raise this issue of fact. As soon as such issue of fact develops it is the court's duty, *under the summary judgment cases,* to deny the motion for summary judgment. As said in the Walsh case, *supra,* ''Thus, in passing upon a motion for summary judgment, the primary duty of the trial court is to decide whether there is an issue of fact to be tried. *If it finds one, it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived.*'' (Emphasis ours.) We are, of course, mindful of the fact that in a mandate case a jury trial is discretionary. The petitioner was and is entitled to have issue joined by an answer under oath on the return of the alternative writ. (Code Civ. Proc., § 1089.) The question of the legal effect of the 56-day break in the marital status likewise could have been and can be raised by the answer (*Scott* v. *Superior Court of Los Angeles County,* 83 Cal.App. 25, 31, *supra; Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 797 [136 P.2d 304]) and the whole case heard and tried in the manner amply and sufficiently provided by the mandate sections.

In the Dare case, *supra,* there is to be found in the prevailing opinion a full review of the sections dealing with mandate cases where (at 21 Cal.2d 796 [136 P.2d 307]) it is said: "First, the petitioner comes before the court governed by the provisions of the Code of Civil Procedure applicable to mandamus proceedings (Code Civ. Proc., §§ 1084 to 1097 inclusive). *In the disposition of such proceedings the court is likewise governed by those code sections. The powers and duties of the court in the premises are provided for therein.*" (Emphasis ours.)

In the case at bar there was a departure from those sections, the result of which was to prevent a hearing of the petitioner's case. The affidavits filed on the motion under 437c effectively constituted "a second set of pleadings in the action" (*Gardenswartz* v. *Equitable etc. Society, supra*) and led to the premature trial of an isolated issue. The case of *Walsh* v. *Walsh,* 18 Cal.2d 439 [116 P.2d 62], quoted earlier, was cited in the trial court. It contains a review of several cases decided since the last amendment of section 437c. In reversing a judgment of dismissal predicated upon the granting of a motion for summary judgment the court said: "The summary judgment statute is drastic and its purpose is not to provide a substitute for existing methods in the trial of issues of fact." In *Eagle Oil etc. Co.* v. *Prentice,* 19 Cal.2d 553, 555 [122 P.2d 264], the court says: "The issue to be determined by the trial court in consideration of a motion thereunder (437c) is whether or not defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case" (citing a number of cases including *Walsh* v. *Walsh, supra; Gardenswartz* v. *Equitable etc. Society, supra,* and *McComsey* v. *Leaf,* 36 Cal.App.2d 132 [97 P.2d 242], which was cited by the petitioner in the trial court).

Whether the 56-day break in the marital status would defeat the petitioner's claim for pension is a legal question. We are asked to decide it as long as it is up here regardless, so to speak, of how it got here. But, as we have pointed out, the question was not brought before the trial court in the proper way, it was only one of several potential issues in the case, and the petitioner was clearly entitled to have all issues, both of law and fact, tried and determined at one time and

according to the procedure long settled for the handling of mandate proceedings.

We are satisfied that the summary judgment procedure was never intended by the Legislature to be imported into mandate which, is itself "in the nature of a summary proceeding." (*Private Investors* v. *Homestake Mining Co.,* 16 Cal.App.2d 1, 3 [60 P.2d 146].)

The judgment of dismissal is reversed.

Nourse, P. J., and Dooling, J. pro tem., concurred.