[Civ. No. 8077. Third Dist. Aug. 12, 1952.]

STANLEY J. GALE, Appellant, v. ALFRED WOOD et al., Respondents.

Stanley J. Gale, in pro. per., and Pease & Lally for Appellant.

Busick & Busick for Respondents.

VAN DYKE, J.—This is an appeal from a summary judgment entered on motion of the respondents who were the defendants in the action. The relief asked by appellant's complaint was the specific enforcement of what appellant alleged was an agreement for the sale to him by respondents of certain real property. His complaint averred that on June 5, 1950, respondents "agreed to sell" to him the subject property by a written agreement in form and substance as follows:

"June 5, 1950.

"Mr. Stanley J. Gale
326 Ochsner Bldg.,
Sacramento, Calif.

Dear Sir:

In consideration of sum of $50.00 to us paid in hand, we hereby agree to sell you home owned by us located at no. 4332 Tee Street, sacramento, for total price of $14,500.00 on following terms and conditions.

(1) Sum of 12,000.00 (less deposit) to us in cash and balance of $2500.00 to be evidenced by 2nd trust deed in amount of $2500.00 (behind a first of $9500.00 due in one year from date of making with interest at 5 per cent.

(2) Home to be delivered to you free and clear of any incumbrances. We will furnish deed and title policy.

(3) Taxes, water, insurance ect., to be pro-rated as of date of closing.

(4) If I cannot furnish clear title, I will refund your deposit. To be closed
    by July 1st 1950

Yours very truly,
/s/ Alfred Wood
/s/ Esther Wood
    5331 25th Street
    Sacramento, Calif.
    HI 5 0591

Accepted
/s/ Stanley J. Gale"

It was further alleged that "pursuant to said agreement (Exhibit 'A'), plaintiff paid to defendant, the sum of $50.00." To these allegations respondents made answer as follows: They denied generally the allegations they had agreed to sell the subject property and in connection with their denial

they alleged that the written document, execution of which by all parties they did not deny, constituted an offer to sell the subject property to appellant; they admitted the receipt of the $50.00, but affirmatively alleged that it was paid to them "in consideration of Defendants' maintaining and keeping open said offer until July 1, 1950." They further affirmatively alleged that after June 5, 1950, the date of the instrument, they placed in escrow as directed by appellant "a Grant Deed to said real property with instructions to deliver the same to Plaintiff upon the receipt of $12,000.00 and a Note and Deed of Trust for $2,500.00 *as provided in said offer to sell*" and that thereafter appellant notified respondents that he could not obtain the necessary funds and that they could withdraw their deed from escrow, which respondents alleged they did. We think it unnecessary to go further into the contents of the complaint and answer except to say that there were allegations in the complaint usually found in specific performance actions which were by the answer substantially denied.

The parties proceeded to trial and after some evidence had been taken appellant asked leave to amend his complaint, which leave was granted and further proceedings were ordered continued. A lengthy amendment to the complaint was then filed, which, however, did not affect those portions of the complaint and answer hereinbefore set out, but did seek to allege facts upon which to base. an estoppel of respondents to claim that by failing to complete his end of the bargain within the closing time set by the written document appellant had suffered the loss of his rights to compel a conveyance. From the record before us it appears that no answer was filed to these amendments. Service and filing thereof had been completed December 19, 1950, and without answer thereto, and on December 26th following respondents noticed a motion for summary judgment upon the grounds: 1. That the complaint as amended affirmatively showed that the "offer or option pleaded" was not accepted within the time limited by its terms and that therefore the right to purchase ceased by the mere passing of time; 2. That the rule of equitable estoppel was not applicable to such a situation; 3. That the complaint as amended affirmatively showed the written instrument lacked "the mutuality which is required to state a cause of action for a specific performance"; 4. That if the said instrument be construed as an executory contract its provisions were "so indefinite, ambiguous and uncertain

as to make said document not a proper document upon which to base the drastic equitable remedy of Specific Performance." The motion was supported by affidavit of respondent Esther Wood and opposed by affidavit of appellant. Thereafter the motion was granted and the summary judgment appealed from was entered, the court therein stating that it had "concluded as a matter of law, that the contract and offer of sale pleaded by plaintiff and marked Plaintiff's Exhibit 'A' upon which this action is predicated, was an option to sell, and that time was of the essence of said option, and that said option was not accepted by plaintiff within the time limited by the terms of said option, and that plaintiff's right to purchase ceased by the passing of that time." The court declared further that the rule of equitable estoppel was not applicable to such an option situation and that since there was no triable issue of fact and plaintiff's action had no merit the action should be dismissed.

Section 437c of the Code of Civil Procedure providing for summary proceedings, where a claim is made that an action is unmeritorious, provides, so far as applicable here, that "when an answer is filed in an action . . . for specific performance of a contract in writing for the sale or purchase of property, . . . if it is claimed . . . that the action has no merit, on motion . . . supported by affidavit . . . the complaint may be dismissed and judgment may be entered, . . . unless the other party, by affidavit . . . shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." █ If an issue of fact is presented the summary judgment cannot be granted and the court must permit trial of the issue. (7 Cal.Jur.10-Yr. Supp. 277.) █ In passing on such a motion the primary duty of the trial court is to decide whether there is an issue of fact to be tried. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62].) Issue finding rather than issue determination is the pivot on which the summary judgment turns. (*Id.*)

█ It follows as a corollary and from the express language of the section that an answer is a prerequisite to the motion for summary judgment. (*Loveland* v. *City of Oakland,* 69 Cal.App.2d 399, 402 [159 P.2d 70].) Obviously the court cannot tell what the issues are in any case until the answer comes in. (As hereinbefore noted, the allegations of the amendment to the complaint whereby appellant sought to set up an estoppel on the part of respondents to claim that the time limits of the option, if the pleaded document be con-

strued to be an option, had not been extended, were unanswered when the motion was made and passed upon. The record, therefore, was not in the situation required by the statute. However, we prefer not to place our decision upon this ground as there are more cogent reasons why the judgment appealed from must be reversed.) Said the court in *Walsh* v. *Walsh, supra*: The universal practice is "to permit this expedited procedure only where it is perfectly plain that there is no substantial issue to be tried." ▮ In considering affidavits pro and con when such a motion has been made, those of the moving party are to be strictly construed, those of the party opposing the motion are to be liberally construed (*Gibson* v. *De La Salle Institute*, 66 Cal.App.2d 609, 618 [152 P.2d 774]), and if there be conflict the affidavits of the opposing party must be accepted as true. (*Id.*) ▮ Applying these rules to the pleadings as hereinbefore referred to we find that whereas appellant characterized the document which the parties signed as one whereunder respondents had agreed upon the terms and conditions therein stated to sell the subject property to him the respondents in their answer characterized the same instrument as constituting an option. That is to say, they contend their agreement was that they would, up to and including July 1, 1950, keep in force and unwithdrawn an offer to sell the subject property to appellant upon the expressed terms and conditions. There are fundamental differences, of course, between these two opposing constructions. Thus if the proper interpretation of the instrument was that contended for by respondents then, unless the offer contained in the option was accepted within the limited time, no contract of sale would arise. On the contrary, if the proper construction of the instrument was that contended for by appellant the instrument constituted a bilateral contract of purchase and sale and the provision therein that the deal was "To be closed by July 1st, 1950" was no more than the fixing of the moment of time when the obligation of respondents to convey and the concurrent obligation of appellant to pay were to be performed. And the passing of the date without more would not leave either party in default. (*Thein* v. *Sticha*, 93 Cal.App.2d 295 [209 P.2d 13].) When we look at the instrument itself we find that the word "option" is not contained in the instrument and that the language thereof states that the respondents agree to sell the property to appellant. Further, we see that the instrument in the main part, and excluding the words "To

be closed by July 1st, 1950," purports to be a letter or communication signed by the respondents and addressed to the appellant. Notwithstanding the use of language of agreement as noted, such a communication if delivered would constitute no more than an offer to sell which might be accepted before revoked, but which would be no agreement of any sort when communicated to appellant. It is to be observed further that if before the offer was withdrawn the same should have been accepted by appellant the result would have been a bilateral contract of purchase and sale wholly capable of enforcement should respondents unjustifiably refuse to carry out their part of the bargain. It is further observable that if, after receipt of the offer and before its withdrawal, appellant, with intent to accept, had written the word "Accepted" upon the face of the instrument, signing his name thereunder and he properly communicated these matters to respondents there would have been an effectual acceptance of the offer. (*Olin Co.* v. *Lambach,* 35 Idaho 767 [209 P. 277, 44 A.L.R. 354].) Further, if when the offer was communicated to appellant the words "To be closed by July 1st, 1950," which appear upon the face of the instrument in a position separating them from the main body of the communication, were not then on the instrument and were put on by appellant without respondents' assent, the legal result would have been simply the rejection of the offer and the making of a counter offer containing the additional terms so added, to which counter offer an assent by the respondents would be essential before a binding contract would arise. (*Ajax Holding Corp.* v. *Heinsbergen,* 64 Cal.App.2d 665 [149 P.2d 189] ; see, also, West's Cal. Dig., "Contracts," § 23, "Qualified or conditional acceptance of offer.") If, on the other hand, we suppose, touching the circumstances under which the instrument was executed, the parties were together negotiating for the sale of the property and the instrument, excluding the words "To be closed by July 1st, 1950" and "Accepted Stanley J. Gale," had been written as evidencing the proposed agreement of the parties and was yet unsigned, and if at that point further discussion had arisen concerning the time when the sale might be closed and the parties then with mutual assent caused to be added anywhere in the instrument the words "To be closed by July 1st, 1950" and that having been done all parties signed, a finding that a bilateral agreement of purchase and sale arose would be supported. Ac-

cording to the affidavit of appellant that is exactly what occurred.

What has been said is not intended as in any sense a decision by this court as to the exact nature of the instrument, but has been said to point up the proposition that by reason of the form of the instrument and the opposing pleadings and affidavits of the parties as to what the parties intended to accomplish by its execution, there were presented issues of fact which necessitated a trial and precluded the granting of a summary judgment.

The situation is similar to that disclosed in *Walsh* v. *Walsh, supra,* where the controversy between the parties to the action was as to the meaning with which certain words were used, the one party claiming that the pertinent words were intended as terms of description, while the opposing party claimed that they were words of limitation. Said the court, at page 443:

"We are of the opinion . . . that the word 'child or children' as there used are ambiguous and indefinite. . . . On its face the phraseology . . . in its entirety is reasonably consistent with either of the interpretations advanced here by the litigants. When a contract is in any of its terms or provision ambiguous or uncertain, 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.'* . . . 'When the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, *the question of its meaning is one of fact.'* . . .

"Applying the rules of law above stated, it is clear that the trial court should have denied defendant's motion for a summary judgment so that the issue raised between the parties hereto as to the duration of defendant's undertaking to furnish support and maintenance to the plaintiff might be tried upon its merits." (See, also, *Loveland* v. *City of Oakland,* 69 Cal.App.2d 399 [159 P.2d 70].)

See, also, *Grueninger* v. *Livingstone & Co.,* 90 Cal.App.2d 266 [202 P.2d 785], wherein the issue was as to whether or not a document should be construed as a contract for a cash sale of securities or as one wherein the price was to be paid by installments. See, also, *Travelers Indemnity Co.* v. *McIntosh, ante,* p. 177 [245 P.2d 1065], where

court said that in an action for money allegedly due under an assignment where interpretations in the affidavits of both parties, one asserting that no money was due under the assignment, and the other to the contrary, were reasonable, a question of fact was thereby presented to be resolved on the admission of parol evidence.

We think it apparent from what has been said that both by the pleadings and by the affidavits there were presented issues of fact involving the intentions of the parties who signed the instrument upon which the action is based, which issues were and are factual, precluding the granting of a summary judgment based upon the trial court's assumption, in passing on the motion, that the construction contended for by respondents that the contract was an option merely was as a matter of law correct, so that when the time limit had passed without acceptance the parties were mutually free from obligations to each other. By reason of the fact that the words ''To be closed by July 1st, 1950'' were placed upon the document, separated from the main part thereof, doubt is cast as to just what the parties intended. These and other factors hereinbefore stated show that the instrument might be susceptible of either of the opposing constructions advanced by the parties, thus necessitating testimony of the facts and circumstances under which the document was executed and presenting factual issues as to the intentions of the parties and therefore as to what in fact their undertakings had been.

The judgment is reversed.

Adams, P. J., and Schottky, J. pro tem., concurred.