**Neal A. HAUSAM, Appellant,**

v.

**Louis A. WODRICH, Appellee.**

**No. 3064.**

Supreme Court of Alaska.

Feb. 3, 1978.

Karl L. Walter, Jr., Groh, Benkert & Walter, Anchorage, for appellant.

Roger H. Beaty, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, and BURKE, JJ.

CONNOR, Justice.

This is an appeal from a judgment of the superior court granting specific performance of a contract for the sale of real property. Finding no error, we affirm.

Appellant Neal Hausam is the legal owner of a piece of land in the Roosevelt Park subdivision in Anchorage which is improved with a fourplex apartment building. Appellees Louis and Janet Wodrich learned from their real estate broker, Hollis Gamel, that the property was for sale, and on

March 24, 1975, the Wodriches signed a purchase agreement, offering $85,000.00 for the property. On March 25, 1975, Hausam used the same standard form agreement to make a counteroffer to the Wodriches, raising the selling price to $87,000.00 and making the sale "subject to release with no penalty by S.B.A." By signing the agreement, Hausam appointed Hollis Gamel his agent for purposes of completing this transaction; Hausam also agreed to pay a commission of $5,220.00 to Yukon Realty. The Wodriches notified Gamel and Jim McCourt of Yukon Realty that they accepted Hausam's counteroffer.

The Wodriches intended to meet the down payment and closing costs by refinancing their home. The refinancing arrangement was approved, but there were numerous delays at the bank in processing the necessary paperwork. The brokers therefore, prior to May 24, 1975, extended the closing date by 30 days as permitted by the purchase agreement. The funds were still not available by June 23, 1975, and Gamel testified that although all paperwork had been completed, the bank had told him that it would not be able to disburse the funds for another 72 hours. Mr. Wodrich therefore secured a $10,000.00 personal loan from the bank and an additional $3,156.12 from his credit union. He deposited these funds in the escrow account, which together with the $500.00 deposit amounted to $13,-656.12, or some $2,000.00 short of the amount of down payment and closing costs required to be paid under the agreement. Wodrich offered to get the additional $2,000.00 from his credit union, but Gamel and McCourt told him that their commission would amount to more than that sum and that they were willing to wait for a few days until the refinancing money became available. Hausam was not informed of this arrangement.

On June 24, 1975, the day set for closing, Hausam refused to complete the transaction because of a dispute over whether the furniture and a dumpster were included in the purchase price. Hausam also complained that rents had not been properly prorated. Hausam was not then aware that Wodrich had not made the full down payment. McCourt called Hausam and asked him to complete the transaction. Hausam refused to do so because the rent prorations were not complete and because he believed that the 30-day extension had expired.

On July 14, 1975, Hausam entered into an agreement to sell the property, including the furniture, to Charles and Rose Robinson for $87,200.00. Wodrich filed a lis pendens and a complaint for specific performance the same day. A few days later, Jim McCourt, doing business as Yukon Realty, filed suit against Hausam to recover a commission of $5,220.00 on the transaction with the Wodriches.

The trial court granted summary judgment in favor of the Wodriches on two issues, ruling that the agreement between the parties was a contract of sale rather than merely an option, and that the subsequent conveyance of the property to bona fide purchasers did not bar the lawsuit because Wodrich had filed a lis pendens.

A trial without jury was held on the remaining issues, namely, whether the Wodriches had complied with the terms of the agreement, whether the agreement comprehended the transfer of the apartment furnishings and a dumpster in the purchase price of $87,000.00, and whether the parties had agreed that any limitations imposed by the S.B.A. upon Hausam in using the sale proceeds as a condition for releasing its lien would discharge the parties' agreement, and if so, whether such a limitation had been imposed. The trial court ruled that Wodrich had breached the agreement, but that the breach was not material and did not discharge Hausam's duty to perform; that the condition regarding release by the S.B.A. had been satisfied; that the dumpster was not included in the purchase price, but that the furniture was; and that the real estate agents were entitled to a commission on the transaction. The court ordered Hausam to specifically perform and awarded $9,680.62 in attorney's fees to the plaintiffs. Hausam has appealed.

An action for specific performance is equitable in nature. The decision to specifically enforce a contract is within the discretion of the trial court and will be reversed on appeal only where it is against the clear weight of the evidence. *Moran v. Holman,* 501 P.2d 769 (Alaska 1972); *Jameson v. Wurtz,* 396 P.2d 68 (Alaska 1964). We find that the trial court committed no abuse of discretion in the instant case.

## I

We turn now to the first of several issues presented by appellant.[1] Hausam claims that the agreement entered into with the Wodriches was an option, rather than a contract of sale, because the agreement contained a forfeiture clause and also provided that the offer was "contingent upon buyer's inspection and·approval of all books and records." We disagree. Under a contract for the sale of land, the owner is bound to sell the property and the purchaser to buy it, whereas under an option, the optionee is not bound until he exercises his right to buy the property.[2] If the vendee agrees to purchase the property, the presence of a forfeiture clause does not "convert the agreement into an 'option'." James, *The Law of Option Contracts*, § 109 at 23 (1916).

Hausam's contention that the agreement was an option because it was contingent upon Wodrich's inspection and approval of all the books and records is equally without merit. This clause does not create an "illusory promise" problem. Such promises are generally read to require the exercise of honest judgment and good faith, and on this basis, may be upheld. *See* 5 *Williston on Contracts,* § 675A at 190, § 675B at 213 (3d ed. 1961); *Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625 (1958). We conclude that the trial court did not err

in finding that the agreement was a contract of sale.

## II

Appellant claims that owing to the dispute over the inclusion of the furniture and the dumpster in the sale price, the contract is too uncertain to be specifically enforced. We do not agree.

A contract must be "reasonably definite and certain as to its terms" to be specifically enforceable. *Rego v. Decker,* 482 P.2d 834 (Alaska 1971); *Lewis v. Lockhart,* 379 P.2d 618 (Alaska 1963); *Alaska Creamery Products, Inc. v. Wells,* 373 P.2d 505 (Alaska 1962). The mere presence of a factual dispute does not preclude specific performance, though it may mean that summary judgment is not appropriate. *See, e. g., Gale v. Wood,* 112 Cal.App.2d 650, 247 P.2d 67 (1952). The trial court in the instant case found that the dispute on this issue precluded summary judgment, but did not render the contract too indefinite to be specifically enforced. Following trial on this issue, the court below ruled that the furniture, but not the dumpster, was included. "Where interpretation of a written instrument turns on the acceptance of extrinsic evidence, the process of weighing such evidence should be for the trier of fact." *Lewis v. Anchorage Asphalt Paving Co.,* 535 P.2d 1188, 1194 (Alaska 1975). We will not set aside a finding of fact of the trial judge unless it is clearly erroneous. *Peters v. Juneau-Douglas Girl Scout Council,* 519 P.2d 826, 833 (Alaska 1974); *Ayers v. Day and Night Fuel Co.,* 451 P.2d 579, 582 (Alaska 1969); Civ.R. 52(a). Applying this standard to the case at bar, we find no error.

## III

Hausam argues that the trial court erred in ruling that Wodrich's failure to pay the

---

1. Appellant cites as error the trial court's holding that the prior sale to the Wodriches prevailed over the subsequent agreement to sell the property to the Robinsons. As the Robinsons have renounced all interest in the property and have been dismissed from this suit by stipulation of the parties, we find that this issue is moot. Therefore, we decline to discuss it.

2. *See e. g., Suburban Improvement Co. v. Scott Lumber Co.,* 59 F.2d 711 (4th Cir. 1932); *see generally* Annot. 87 A.L.R. 563 (1933), and cases cited therein; California Continuing Education of the Bar, *California Real Estate Sales Transactions,* J. Moore and R. Sturhahn, "Options," § 7.2 (1967); James, *The Law of Option Contracts,* § 102 (1916).

entire down payment into the escrow account was a minor breach. Hausam contends that Wodrich's failure to tender the full $15,000 precludes a grant of specific performance. However, courts of equity do not require literal performance of all acts required to be done under the contract before specific performance may be granted.[3] Although a plaintiff seeking specific performance must demonstrate that he has the ability to perform should specific performance be granted, actual tender is not necessary where the defendant has indicated that he will not complete the transaction.[4] Whether a plaintiff seeking specific performance has made a sufficient tender is a determination within the discretion of the trial court.[5]

██ In the case at bar, Wodrich was relying on the representation of the real estate agents that he need not deposit the additional $2,000. Wodrich testified that he had offered to obtain additional funds from his credit union. He also testified that he did not deposit the rest of the down payment into the èscrow account after Hausam refused to perform. Thus, Wodrich's failure to literally comply with the terms of the contract was not in bad faith and could be corrected by remitting the full down payment. The trial court was apparently satisfied that Wodrich had the ability to perform. Under the circumstances, we conclude that the trial court did not err on this issue.

██ We likewise reject Hausam's contention that Wodrich is guilty of unclean hands in failing to tender the entire down payment. Hausam contends that the realtors acted unethically in changing the terms of the agreement regarding the down pay-

ment, in failing to fully inform Hausam as to the actual amount paid by Wodrich, and in considering part of the money paid into the escrow account as theirs. Although the conduct of the brokers may have been somewhat questionable, there was testimony which indicated that commission deferral is not uncommon in the real estate business. Wodrich's testimony indicates that he was acting in good faith. That he innocently relied on brokers who may have been in a hurry to receive their commission should not bar his suit for specific performance.

## IV

██ Hausam next argues that the trial court erred in finding that the agreement did not expire on June 24, 1975. A finding of fact by a judge in a trial without a jury will only be disturbed by this court if it is "clearly erroneous." Alaska R.Civ.P. 52(a); *State v. Guinn*, 555 P.2d 530, 534 (Alaska 1976). A finding is clearly erroneous only when the court is left with the definite and firm conviction on the entire record that a mistake has been committed. *Kaatz v. State*, 540 P.2d 1037, 1041 (Alaska 1975). We are of the opinion that there was sufficient evidence to support the trial judge's conclusion that the agreement did not expire on June 24, 1975.

## V

Hausam also claims that the trial court erred in holding that the realtors were entitled to their commission since there was no listing in effect on the property at the time of the Wodrich-Hausam agreement. Hausam relies principally on AS 08.88.341[6] and 08.88.361[7] in support of this contention.

---

**3.** A. Corbin, *On Contracts*, § 1175 at 298–301 (1964); Restatement of Contracts, § 375(2), p. 691 (1932).

**4.** *See* Corbin, *supra*, n. 3, at § 1141.

**5.** *See Di Pompeo v. Preston*, 385 Pa. 512, 123 A.2d 671 (1956).

**6.** AS 08.88.341 provides:
  "Listings. All real estate listings must be in writing and must be signed by the seller or by

an agent of the seller. All exclusive listings must have a definite expiration date."

**7.** AS 08.88.361 provides:
  "When commission is earned. A commission is earned when the real estate broker finds a buyer willing and able to purchase at a price and on terms set by the seller, providing negotiations with the buyer were initiated during the term of a valid listing agreement and within the time limit of the listing."

The purchase agreement signed by Hausam on March 26, 1975, contains a provision expressly acknowledging that the real estate broker is entitled to a commission of $5,220.00 for services rendered in this transaction. This writing, signed by the party to be bound, is sufficient to meet the requirements of Alaska's statute of frauds, AS 09.25.010.[8] In the circumstances, we find no error in the trial court's ruling that the real estate brokers were entitled to a commission of $5,220.00.

### VI

Finally, Hausam challenges the propriety of the trial court's award of attorney's fees to plaintiffs in the total amount of $9,680.62. The trial court awarded $1,180.62 to McCourt under Civil Rule 82(a)(1) and $8,500 to the Wodriches under Civil Rule 82(a)(2). Correctly noting that the purpose of Rule 82 is to partially compensate a prevailing party,[9] Hausam argues that the award of $9,680.62 in fees should be set aside, as this figure represents 86 percent of the total bill submitted by plaintiffs' counsel. We agree that this figure is somewhat high; however, we will set aside an award of attorney's fees only where it is manifestly unreasonable. *Adoption of V.M.C.*, 528 P.2d 788 (Alaska 1974); *Cooper v. Carlson*, 511 P.2d 1305 (Alaska 1973). We cannot say that the instant award was manifestly unreasonable under the circumstances of this case.

AFFIRMED.

MATTHEWS, J., not participating.

---

**8.** AS 09.25.010(a)(8) provides as follows:

"(a) In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent:

(8) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or commission; however, if the note or memorandum of the agreement is in writing, subscribed by the party to be charged or by his lawfully authorized agent, contains a description of the property sufficient for identification, authorizes or employs the agent or broker named in it to sell the property, and expresses with reasonable certainty the amount of the commission or compensation to be paid the agent or broker, the agreement of authorization or employment is not unenforceable for failure to state a consideration;"

**9.** *Irving v. Bullock*, 549 P.2d 1184 (Alaska 1976); *Malvo v. J. C. Penney Company, Inc.*, 512 P.2d 575 (Alaska 1973).